Estate of John Mustin, deceased. Appeal of Ida C. Lloyd, executrix of the estate of John Mustin, deceased.

*Orphans' court—Jurisdiction—Borrowing money.*

To preserve the estate of a decedent from great loss the personal representatives will be protected in such advancements of money as they in good faith may make, and the orphans' court will see that they are reimbursed on settlement of their accounts; and what the court will thus ratify and approve, it may, by precedent decree, authorize.

The orphans' court has jurisdiction to authorize an executor or administrator to borrow money to preserve a partnership business in which the estate is largely interested; but this power should be very cautiously and very rarely exercised.

Testator was a member of a limited partnership association organized under the act of 1874. When the association had ended by its own terms, some years after his death, the executors conducted the business of the company. The partnership becoming embarrassed, the executors petitioned the orphans' court for leave to borrow money to prosecute the business and thus preserve the estate from loss. In this proceeding the ex parte statement of the petitioners was accepted as true, but all of the material facts were not revealed to the court. The court granted the prayer of the petitioner. The money was borrowed, but a few years afterwards the partnership became totally insolvent. *Held*, that as the court had jurisdiction to grant the prayer the mistake of granting it on insufficient evidence did not invalidate it, and the person who loaned the money under the decree of the court was entitled to be paid in full out of the testator's estate.

Argued March 24, 1898. Appeal, No. 403, Jan. T., 1897, by

Ida C. Lloyd, from decree of O. C. Phila. Co., Jan. T., 1893, No. 180, overruling exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

The facts appear by the opinion of the Supreme Court.

On exceptions to the adjudication made by ASHMAN, J., the following opinion was filed by PENROSE, J.:

It is and must be conceded that the attempt to create a joint stock company failed for want of compliance with the requirements of the act of assembly, and that the parties, not having acquired the immunities conferred by the act, when they undertook, notwithstanding, to carry on the contemplated business, did so as members of a mere partnership, with all its ordinary incidents and liabilities. This partnership, as it existed at the decedent's death, was dissolved by that event, and the duty of winding it up and accounting with his executors devolved upon the surviving partner or partners, in spite of the fact that their interest, if such be the fact, was merely nominal. His will conferred no power to continue the business, and his executors, as such, had no right to participate in or interfere with it. Their function was simply to see to the proper settlement of accounts by the surviving partner or partners, who, in the mean time, held such property as the decedent had put into the business as trustee for his estate after payment of firm debts and adjusting balances among the partners themselves. As an asset of his estate, the decedent's interest in the firm was purely intangible—merely the right to an account; and if charged in the inventory filed by his executors, and thus debited in the account, they would, so long as it remained unrealized, be entitled to be credited with its appraised value, unless by reason of their act or negligence it has been lost to the estate. Of course, firm creditors have the right, subject to priority of separate creditors, to proceed against the individual estate of a deceased partner; but his liability for debts of the firm can only be as to such as existed at the time of his death, and cannot extend to such as may have been contracted thereafter, except, of course, in case of mere renewals of previous obligations; and persons dealing with the surviving partners, not in winding up but in continuing

the business, necessarily do so on the exclusive credit of the latter.    If surviving partners continue the business until after they have paid all indebtedness existing at the death of the deceased partner, not stopping even then, it is plain, while his estate would thus become liable to them for contribution, the persons with whom they dealt in so carrying it on can have no claim except against their own debtors, viz : the surviving partners themselves ; while the claim for contribution can only be enforced after proper settlement of partnership accounts, and before the liability of the deceased partner has become barred by the statute of limitations.    This decedent has been dead for more than eight years, and claims by persons who were creditors of the firm at that time cannot, by reason of the lapse of time, be now enforced.    Can there be a liability to other persons upon claims originating after his death ?

We need not consider how far it was competent for the court to authorize the executors, upon an ex parte application, to borrow money.    An executor may be liable in his representative capacity for money lent for the purposes of the estate, Ashby v. Ashby, 7 B. & C. 448, though not for money merely lent to him "as executor," Rose v. Bowler, 1 H. Bl. 108 ; but it must be shown that the money borrowed, in the first case, was for such purposes as were within the scope of the executor's authority, and clearly that is not the case where he uses the money, with the knowledge of the lender that it is to be so used, in continuing the business of a firm of which the testator, years before, had been a member, even though in consequence of there having been no settlement of firm accounts it could be said, truthfully, that his estate is "largely interested." The case is precisely the same where, with no authority conferred by the will, a business carried on by a testator is continued by his executors, not simply for the purpose of winding it up, and where, therefore, though they are liable in their individual capacity, they have no right to create obligations binding his estate.    The decree of 1893 authorized the petitioners to "borrow on their note as executrices a sum not to exceed $20,000 ;" but this is not what was done.    They, with the surviving partner, were carrying on the business of the knitting mills, and the money was placed by the lender to the credit of the mills, the notes being retained as security.    Indeed, it would seem that

the decree was obtained at the instance of the creditor for the purpose of furnishing additional security for antecedent indebtedness of the mills. Under this aspect of the case, as none of the claimants have valid claims against the estate, none can have the right to object to the credits in distribution.

The views which have been thus expressed, which would lead to the sustaining of the exceptions on behalf of the accountant and of the grandchildren of the decedent and the dismissal of all other exceptions, are, however, those of one only of the two judges before whom the exceptions were heard ; and as the other still retains the opinions expressed in his adjudication, the exceptions fall by reason of a divided court, and the adjudication must be confirmed.

*Errors assigned* were in overruling exceptions to adjudication.

*Bernard Gilpin*, for appellant.—The orphans' court cannot on an ex parte application authorize the executrices of an estate to borrow money on their note as executrices, nearly four years after the death of their testator, and make the estate liable to the lender, when said money is to be used, with the knowledge of the lender, not for purposes within the scope of their authority, but to continue a business in which their testator had been interested as a partner at the time of his death : Constitution of Penna. art. III, sec. 22 ; Smith v. Wildman, 178 Pa. 245 ; McKerrahan v. Crawford, 59 Pa. 390 ; Williamson's App., 94 Pa. 231 ; Claghorn's Est., 181 Pa. 600.

*George P. Rich*, with him *Henry C. Boyer*, for appellee.—The bank is a creditor of the new firm, and now being in a court of equity, seeks to enforce the new firm's equity against the individual estate of John Mustin as a member of the old firm. That the bank may do this has been authoritatively settled in this state, by Laughlin v. Lorenz, 48 Pa. 275, a case which in many of its features resembles the present case. See also Hewitt v. Phelps, 105 U. S. 400.

An administrator or executor who has advanced his own money for the purpose of paying debts of the estate due at the time of the decedent's death, is entitled to subrogation to whatever right of recovery or lien the debts thus paid would have

had: Wilkins's Est., 9 Watts, 132; McKerrahan v. Crawford, 59 Pa. 390; Williamson's App., 94 Pa. 231.

OPINION BY MR. JUSTICE DEAN, November 14, 1898:

About the year 1887, John Mustin, the testator, became a special partner with his son, Thomas J. Mustin, in the manufacture and sale of knit goods in Philadelphia, and contributed as his share of the capital, $50,000. In 1888, they, with Robert Patterson, an employee, who contributed only a small sum of money that he might make up three in number, formed a joint stock company in the same business under the act of June 2, 1874, taking the name of "The Thomas J. Mustin Knitting Company, Limited," to continue for five years. The capital was $70,721, of which John Mustin contributed in knit goods and materials $30,000; Thomas J., in cash, goods, machinery and promissory notes of third parties, $23,811.74; and Patterson, $100 in cash. Very soon after the organization, Thomas J., the son, died. Soon after, his father, John Mustin, on May 23, 1888, delivered to Ida C. Mustin, his son's widow, this writing: " I hereby agree that Ida C. Mustin shall receive a salary of $4,000 for her services as treasurer of the Thomas J. Mustin Knitting Company, Limited, in consideration of her acceptance of that position and that she may continue that manufacturing business until such time as she may deem proper to sell it. Signed, John Mustin." One year thereafter he died, leaving a will, of which he appointed his wife Mary executrix, and on her death, Ida C., widow of his son, Thomas J., and Margaret Mustin, widow of his son William, executrices. His widow Mary died in 1890, and the two daughters-in-law at once assumed the office of executrices. Ida C. Mustin, still acting as treasurer, continued to carry on the business of the knitting company in the same name. In January, 1893, she and her coexecutrix presented their petition to the orphans' court, setting forth that the estate of John Mustin was largely interested in the company; that they had been unable to dispose of the business of the company by sale, and praying leave to borrow, as executrices of John Mustin, a sum not exceeding $20,000, to be used in the prosecution of the company business, by paying its debts, and thus preserving the estate of the testator from loss. Upon consideration, the court granted them leave to bor-

row as prayed for, and they did borrow from the Mechanics' National Bank at four different times, on their notes a sum aggregating $20,000, which notes were renewed from time to time, but no part of them was paid. In 1896, the knitting company failed, and all its stock and fixtures were sold by the sheriff on a judgment against the company for the comparatively small sum of $3,500. It turned out that the company, from failure to comply with certain requirements of the act of 1874, was probably nothing but a common-law partnership, and the liability of the partners, nothing less than that of the members of an ordinary partnership.

On March 29, 1897, Ida C. Mustin (afterwards married to Lloyd), and Margaret Mustin filed the account of Mary Mustin, their predecessor, as executrix of her husband, and this account came up for adjudication. The auditing judge, ASHMAN, decided, on the evidence, that the partnership of the knitting company ended by its own terms December 31, 1892 ; that thereafter those who carried it on were general partners, and the liability of the estate of the deceased partner as to future debts ended ; that of this creditors were bound to take notice, and thereafter look to the liability of those who in fact carried on the business as general partners ; but an exception was made in favor of the Mechanics' National Bank, which loaned its money on the faith of a decree of the orphans' court. As to this debt, the estate of John Mustin was held answerable. On exceptions, the court, composed of the auditing judge and Judge PENROSE, was divided, and the adjudication was therefore confirmed. It is now argued on this appeal that the orphans' court had no jurisdiction to authorize the borrowing of the $20.000, and of this the lender was bound to take notice.

We think the court had jurisdiction to make the decree. True, it is one which should be very cautiously and very rarely exercised. To preserve an estate from great loss the personal representatives may in good faith advance money and will be protected in such advancement, and the orphans' court will see that they are reimbursed on settlement of their accounts. This has been frequently decided. What the court will thus ratify and approve it may by precedent decree, authorize. It is highly probable that if the executrices had of their own motion borrowed the money and invested it in the partnership the court

would not, in view of the facts developed, have approved such action on the adjudication of the account. But that only shows the authorization to borrow was decreed on insufficient evidence. The ex parte statement of the petitioners were accepted as true; the adjudication developed, they were not in all respects true, and did not state nearly all the material facts. The mistake, while suggesting the importance of extreme caution before such decree is entered, in no way affects the conclusiveness of it. It was a judicial decree which the court had power to make, and it protects him who loaned his money on the faith of it. We think the auditing judge was right in awarding to the Mechanics' National Bank the amount of its loan.

The other exceptions to the adjudication have no merit which warrants discussion, and the adjudication is affirmed.

The appeal is dismissed at costs of appellant.