# Furst, Appellant, *v.* Armstrong.

*Will—Executors and administrator—Direction as to carrying on business.*

A testator may by his will empower his executor to carry on the business in which he is engaged at the time of his death, and when he does so he subjects the assets of his estate to debts contracted for that purpose. Whether liability for the trade debts of an executor extends to the entire estate, or is limited to a specific fund depends upon the authority conferred upon the executor by the will.

A testator who was the owner of various pieces of real estate and was

engaged in managing that, and in manufacturing and in other business, directed in his will as follows: " And I give to my said executor full power to conduct for such time as she may see fit, the business in which I may be engaged at the time of my death." The executrix assumed charge of all the testator's interests, and carried on the various branches of the business, paying off all of the indebtedness which the testator owed at the time of his death, but incurring new debts in the course of the business. *Held,* (1) that the executrix had authority not only to carry on the business of manufacturing, but also had the power to engage in farming and storekeeping and renting the testator's tenement houses as he had done prior to his death; (2) that the executrix in the absence of any provision in the will to the contrary could subject the general assets of the estate to liability for the trade debts contracted by her, and was not limited to the capital invested in the business at testator's death; (3) that the widow of the testator who had not elected to take against the will, took under the will and her share was liable with the other assets for the trade debts.

Argued March 18, 1902.    Appeal, No. 55, Jan. T., 1902, by plaintiffs, from decree of C. P. Lycoming Co., June T., 1899, No. 1, on bill in equity, in case of John S. Furst and Pauline H. Furst v. Robert F. Armstrong, Celia H. Armstrong and Louisa M. Houston.    Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Bill in equity for partition.

McCLURE, P. J., specially presiding, found the facts to be as follows:

1. Levi Houston moved from Smithville, New Jersey, to Montgomery Station, Lycoming County, Pennsylvania, in 1873, and there entered into the business of manufacturing woodworking machinery with Hall and Smith under the firm name of Houston, Hall & Smith.    Hall retired in 1874 and the business was conducted under the firm name of Houston & Smith. This partnership was dissolved in 1877 and Houston continued the business in his own name from that time until his death in 1892.

2. Mr. Houston's business prospered under his management and he invested from time to time considerable money in real estate in and about Montgomery.    The purchase money for these properties was taken from his business.    In 1880 or 1881 he built a store on a lot thus purchased and placed one Nathan Fowler in charge, allowing him two thirds of the profits.    This store was run in the name of Houston & Company down to the

time of Mr. Houston's death. At this store many of his employees at the machine works and planing mill dealt, and their bills were charged up to their accounts in the° books of the works. A separate set of books was kept at the store but the general accounts ran into the books at the wood-working machine office.

3. In 1889 Mr. Houston built a planing mill on land owned by him near the machine shop and conducted a general planing mill business there until his death. There was also a separate set of books for this mill and the materials used in its construction were charged against it in the wood-working machine books.

4. From time to time he purchased farms and farm lands and managed them as he did his other business, some of the produce being disposed of through the store, the accounts going into the general books of the machine works.

5. Among other real estate transactions he purchased a house on West Fourth street in Williamsport for a home, a house on Edwin street in the same city, and land in Milton, Pennsylvania. He erected houses on various lots he had purchased in Montgomery, some of which he rented to his employees, and the rent was collected through the office of the machine works. He seems to have made no distinction in the houses occupied by his employees and his other real estate. They were carried along on his books in the same way. He had no house account, and only for a short time a real estate account, which was charged off to and thereafter kept in Levi Houston's account.

6. This Levi Houston account was the general receptacle for all the other accounts. Into it went the profit and loss of the machine works and the general store. It was charged with the purchase money for lands bought, with repairs to the hotel, farms and his home in Williamsport, as well as to the houses in which his employees lived.

7. When he erected the hotel in Montgomery the materials that went into it from the planing mill were not charged to any account at all. The items paid by Houston to other parties for material used and work done in its construction were charged to "Levi Houston Account," as was also the labor of his own men upon the building. This was in accordance with his usual custom to have the labor of his hands in the mill

charged to labor account, and for work outside, on the farms, store or houses, to Houston account.

8. While the repairs were, as above found, charged to Levi Houston account the taxes and insurance upon the same properties were charged to the tax and insurance accounts in the machine works books, and from time to time went to the make-up of the profit and loss account of that business. All the rents received from his store, hotel and tenement houses were credited upon the same books to rent account, and in closing the books from time to time to show a profit or loss the rent account was charged with the amount there shown, and profit and loss was credited with it.

9. April 20, 1888, Mr. Houston made his will, which was duly probated August 1, 1892, wherein he ordered his debts and funeral expenses to be promptly paid, gave his wife such interest in his real and personal estate as she would be entitled to under the intestate laws of the state, and the residue of his estate he devised and bequeathed to his two daughters, Celia and Pauline, share and share alike. The fourth item is as follows : "I appoint my daughter, Celia M. Houston, to be the executor of this my will, with full power to sell and convey at public or private sale any or all the real estate of which I may die seized, and vest in the purchaser thereof a fee simple or other less estate as to my executor may seem meet. And I give to my said executor full power to conduct for such time as she may see fit the business in which I may be engaged at the time of my death."

10. Under the powers conferred upon her by the will Celia took entire charge of her father's property, leased, sold and conveyed real estate, and conducted the business in which he had been engaged from the date of his death to December 15, 1897, so far as the planing mill and shop were concerned, when a sale was made of this property to the American Wood-Working Machine Company, and until August 6, 1898. so far as the store was concerned, when it was sold to P. R. Helmbold.

11. At the time of his death Mr. Houston's indebtedness amounted to about $61,000, incurred in the purchase of merchandise used in the various branches of the business, the store, the mill, the shop, for horses, horse feed, etc. These debts were paid by Celia while conducting the business under the powers

conferred upon her by the will, and were replaced to some extent by her obligations as executor amounting to $52,000.

12. March 20, 1899, a bill in equity was filed by John S. Furst and Pauline H. Furst, praying for a commission in partition to divide, partition and allot the real estate of Levi Houston, not then sold by the executrix, comprising land in Williamsport, Milton, Montgomery and Clinton township particularly described in the third section of the bill. To this bill separate answers were filed by Robert F. Armstrong. Partition of the lands is resisted on the ground that by the terms of the will an active trust was imposed upon the executrix to conduct the business in which Mr. Houston was engaged at the time of his death; that all of the real estate described in the bill, with the possible exception of the dwelling house in Williamsport, was embarked in his business; that the debts created by the executor in continuing the business are liens and charges against the real estate sought to be partitioned and must be paid before partition can be had.

The court held that the general assets, including the real estate, were liable for the obligations contracted by the executrix, but granted the prayer of the appellants, and awarded partition. Subsequently the appellants for the purpose of having the will construed moved the court to dismiss the bill. The court thereupon made a pro forma order dismissing the bill, and refusing partition.

*Errors assigned* were in overruling various exceptions, and in dismissing the bill.

*Max L. Mitchell* and *A. O. Furst*, with them *W. S. Furst* and *W. D. Crocker*, for appellant.—While a testator has the power either to render his entire estate liable for the payment of business debts contracted after his death, or to restrain the liability to capital already put into partnership, exempting the rest, nothing but the most clear and unambiguous language, demonstrating in the most positive manner that the testator intended to make his general assets liable for all debts contracted in the continued trade, will justify such a conclusion. A provision in the will, or in the articles that the business is to be continued, or that his capital is to remain, is not sufficient to affect that

part of the estate not already embarked in the partnership:
McArdle v. West Phila. Title & Trust Co., 7 Pa. Superior Ct.
328 ; Laughlin v. Lorenz, 48 Pa. 275 ; Burwell v. Cawood, 2
Howard, 560 ; Wilcox v. Derickson, 168 Pa. 331 ; Waddell's
Est., 196 Pa. 294 ; McNeillie v. Acton, 53 Eng. Chan. Rep.
591.

The office of a trustee, being one of personal confidence, can-
not be delegated : Lewin on Trusts, sec. 252 ; Alexander v. Al-
exander, 3 Ves. 643.

A mere power, not a direction was given : McMurtrie **v.**
Penna. Co., 9 Phila. 529 ; Hill on Trusts, 482 ; Woddrop v.
Weed, 154 Pa. 307 ; Mathews v. Stephenson, 6 Pa. 496 ; Mat-
thews v. Stevenson, 9 Pa. 316 ; Baskin's Appeal, 34 Pa. 272.

The "business" referred to in the will was a "going" trade
or business in its commercial sense, and not the conduct of the
testator's whole estate.

The term business meant the business, not all businesses,
but a business ; the business in which he might be "engaged
at the time of his death."

The meaning of the word "business" is to be determined (if
evidence aliunde the will is admissible for that purpose), by
the testator's own acts, declarations, advertisements, etc., and
not by secondary evidence.

The appellant is entitled to partition of the real estate set
forth in the bill unincumbered by the trade debts, and the ap-
pellants' prayer for partition should have been granted.

*Seth T. McCormick,* with him *Henry C. McCormick* and *John
G. Reading,* for appellee.—In the absence of an express stipu-
lation or limitation upon the amount of the fund made liable
for debts such as these, the presumption is that the entire estate
of the testator is made liable : Laughlin v. Lorenz, 48 Pa. 275 ;
Mathews v. Stephenson, 6 Pa. 496 ; Stevenson v. Matthews, 9
Pa. 316 ; Baskin's Appeal, 34 Pa. 272 ; Woddrop v. Weed, 154
Pa. 307 ; Mason v. Pomeroy, 151 Mass. 167 ; Whitman's Est.,
195 Pa. 144.

Some stress has been laid upon the question that the court
below was wrong in finding as a matter of law that the word
"business," as used in the will, must be taken in its broadest
signification, and embraces in its meaning everything about

which a person can be employed. In support of the finding of law so made by the lower court, we cite: Parker Mills v. Commissioners of Taxes, 23 N. Y. 244; Goddard v. Chaffee, 84 Mass. 395; Braeutigam v. Edwards, 38 N. J. Eq. 545.

An estate in the situation that the present one is, cannot be legally parted and divided: 1 Perry on Trusts, 436; Kirchner's Estate, 24 P. L. J. (N. S.) 469; Morse v. Morse, 85 N. Y. 53; Hutchison's Appeal, 82 Pa. 509; Latshaw's Appeal, 122 Pa. 142; Larkin's Estate, 4 Del. Co. Rep. 340.

OPINION BY MR. JUSTICE MESTREZAT, April 28, 1902:

The principal and controlling question in this case arises on the construction of the last clause of the fourth item of Levi Houston's will which is as follows: "And I give to my said executor full power to conduct for such time as she may see fit the business in which I may be engaged at the time of my death." It is contended on the part of the appellants that the authority thus invested in the executrix was limited to the "business" of carrying on the planing mill and the manufacturing of wood-working machinery, and did not empower the executrix to engage in farming and store keeping and renting the testator's tenement houses as he had done prior to his death. It is further claimed by the appellants that the executrix could not under the authority conferred upon her by the will subject the general assets of the estate of the testator to liability for the grade debts contracted by her, but that she was limited to the capital invested in the business at the testator's death. On the other hand, the appellees contend and the court below held that all the assets of the testator's estate are liable for the debts contracted by the executrix in the conduct of his business under the power contained in the will.

At the time of the testator's death in 1892, he was the owner of various pieces of real estate and was engaged in managing that and in manufacturing and in other business. His indebtedness at that time amounted to about $60,000. By his will he gave his wife, what she would be entitled to under the intestate laws, and the residue of his estate was given in equal proportions to his two daughters. After he had disposed of all his property, he granted to his daughter, his executrix, authority to sell and convey at public or private sale any or all of

the real estate of which he might die seized. He then added the clause of the will above quoted.

It is unquestionably true that an executor cannot subject any assets of the estate to liability for trade debts unless the will of the testator confers the authority. His duties as executor do not go to that extent. But it is settled that a testator may by his will empower his executor to carry on the business in which he is engaged at the time of his death and when he does so he subjects the assets of his estate to debts contracted for that purpose. Whether liability for the trade debts of an executor extends to the entire estate or is limited to a specific fund depends upon the authority conferred upon the executor by the will. In Toller's Law of Executors, 166, it is said that articles of copartnership may provide for continuing a partnership, " or the testator may by his will direct his executors to carry on his trade after his death, either with his general assets, or appoint a specific fund to be severed from the general mass of his property for that purpose." And in Williams on Executors, * 1688, the author says that " the testator may, by his will, qualify the power of his executor to carry on trade, and limit it to a specific part of the assets, which he may sever from the general mass of his property for that purpose." In Laughlin v. Lorenz's Administrator, 48 Pa. 275, it is held that the personal representatives of a deceased partner may carry on the business for, and bind his estate, where a covenant to that effect exists in the articles of copartnership or he directs by will that it should be done. The above quotation from Toller's Law on Executors is cited as sustaining this principle, and the authorities cited there and here to support the opposite view are said by Judge AGNEW, delivering the opinion of the court, to admit the proposition that the general assets of an estate may be liable for debts incurred in the continuance of the partnership. Lorenz's estate was held liable for the debts contracted by the surviving partner, the court using the following language: " In the present case neither the covenant nor the will of Lorenz limited the fund to be made liable by the continuation of the partnership business after his decease, and we discover nothing therefore to restrain the general liability of his estate."

In the case in hand, the executrix accepted the trust com-

mitted to her by the testator and exercised the power conferred upon her by the will. She took charge of and conducted all the business in which her father was engaged at the time of his death. She paid the indebtedness of $60,000 incurred by the testator during his management of his affairs and for which all the assets of his estate were liable. In accomplishing this work, she contracted certain debts which the appellants, who are beneficiaries under the will, claim should not be paid out of the general assets of the estate. This is not a contest between partnership and individual creditors nor does it raise any question arising out of the partnership relation. The rights of the creditors with whom the testator contracted debts are not involved in this controversy. Those debts have been paid.

The language used by Levi Houston in his will which confers upon the executrix authority to conduct his affairs is broad and comprehensive. She is given " full power " to carry on his business. Everything necessary for the purpose therefore she may command and use. This is necessarily implied. In no other way could she accomplish the object of the trust. The testator was dead and no other person had authority to interfere with his business. If, therefore, it was to be continued as he had conducted it and as his will directed, it was absolutely necessary that the power of the executrix should be ample and unlimited. At the time of his death, his business interests were many and large. He was engaged in manufacturing and in the mercantile business as well as in renting numerous tenement houses and in farming. His executrix assumed charge of all these interests and carried on the various branches of the business as her testator had done. If the contention of the appellants be sustained, she was required to do this with the capital invested in the business. But her power is not thus qualified by the will, nor is she limited to any part of the assets of the estate in executing the trust imposed by the terms of the will. The testator conferred the power to carry on the business and that implied, in the absence of anything in the will to the contrary, the right to appropriate sufficient assets of the estate to accomplish the object. As said in the authorities cited above, he might have limited her power to a specific part of the assets of his estate,

and had he done so she would have been compelled to observe the restrictions placed upon her in the will. In the absence of anything in the will, however, manifesting an intention on the part of the testator to limit the source of revenue to be employed in the business, the executrix may, under the power granted her, use the general assets of the estate. The power of the testator to authorize his executor to continue his business after his death and the designation of the funds of his estate to be devoted to that purpose were alike entirely and solely under his control and subject alone to his testamentary direction. In language that is explicit and amply sufficient he has conferred authority upon his executrix to carry on his business after his death without exercising his conceded right to limit the fund to be devoted to that purpose. We cannot presume that the testator intended to impose any restriction upon her right to use the assets of his estate in the discharge of her duties as trustee.

The evident purpose of the testator in the last clause of the fourth item of his will was to put his executrix in his place with like authority as himself in the management and control of the estate. While he did not fix any time in which she should conduct the business, it may have been his intention that she should retain control until she paid the indebtedness against it and then carry out the scheme of distribution directed in the will. Again, he may have thought that his personal representative should have discretionary power to continue his business so as to avoid loss by being compelled to close it out within the time required for the settlement of decedent's estates. With a view to realizing the full value of his investments, considering the character of his property and the large indebtedness, it doubtless occurred to him that his executrix should have ample powers in the administration of his estate. But whatever may have been his undisclosed intention or purpose, the will placed in the hands of his executrix the estate to be managed and controlled by her with the authority in doing so to incur the necessary obligations.

The widow's interest in the decedent's estate was acquired by virtue of the will and not under the intestate laws. The decedent did not die intestate. The widow was at liberty to reject the provision made for her by the testator and this would

have created an intestacy as to her. She, however, did not elect to take against the will, but on the contrary accepted the profits accruing to her from the management of the estate by the trustee. The will defines her interest and she will receive it on the settlement of the estate, the assets of which are liable for the debts contracted by the trustee.

The learned counsel for the appellants has discussed the right or authority of the executrix to delegate to another her power to conduct the business. The question, however, is not raised by any assignment of error and need not be determined.

The appellants complain that the trustee has been unfaithful to her trust and has squandered the estate. If this be true, the beneficiaries under the will had an adequate remedy and should have invoked it. Since the testator's death in 1892 they have permitted the trustee to manage the affairs of the estate as directed in the will without heretofore alleging, so far as the record discloses, any improper or negligent conduct or any disregard of duty by her. This proceeding does not raise the question and hence it need not be considered.

The plaintiffs' bill prayed for a decree that partition of the real estate of the testator be made between his daughters and his widow. The answer denied the right of partition until payment of the debts incurred by the executor in the conduct of the testator's business as directed by his will. Complainants contended that the real estate was not liable for the trade debts of the executrix. The court, however, held that the general assets, including the real estate, were liable for the obligations thus contracted, but granted the prayer of the appellants and awarded partition. The appellees were satisfied with this order. Subsequently the appellants, notwithstanding partition was awarded as they had asked, moved the court to dismiss the bill. This action was taken by the appellants for the purpose of having this court construe the will of the testator and determine whether the general assets of his estate are liable for the trade debts of the executrix and whether the widow takes under the will or under the intestate law. The court below made a pro forma order dismissing the bill and refusing partition. This order having been made on motion of the appellants for the purpose stated, we will not now reverse the trial judge, although his decree might be erroneous. However, the questions raised

by this appeal having been disposed of, we will give the appellants, if they desire it, an opportunity to have determined under the will their right to partition by permitting them, notwithstanding the affirmance of the decree, to apply to the court below to vacate the decree dismissing the bill.

The assignments are dismissed and the decree of the court is affirmed at the costs of the appellants.