# Weschler's Estate.

*Will—Continuance of testator's business—Profits—Principal.*

Where testator directs that his business should be continued for five years after his death, and that so much of the net profits thereof should be given annually to his children as could be divided without impairment of capital or injury to the business, and that when the business should be closed up the capital should be divided amongst his children, his daughters' shares in trust for their life with remainder to their children, the profits are to be divided up amongst the children, although some of the profits during the five years were used in enlarging the plant; and this is especially so where it appears that the expenditures on the plant brought an increase of price at which the property was sold.

Argued May 2, 1905. Appeal, No. 126, Jan. T., 1905, by D. D. Weschler et al., executors, from decree of O. C. Erie Co., Feb. T., 1904, No. 42, dismissing exceptions to auditor's report in Estate of Jacob Weschler, deceased. Before MITCHELL, C. J., DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to report of Joseph M. Force, Esq., auditor.

The auditor reported as follows :

Jacob Weschler, at the time of his death, was engaged in the malting business, in the city of Erie, and had been so engaged for a number of years prior thereto.

By his will he directed that his malting business should be continued for at least five years after his death, under the management and control of his son, Daniel D. Weschler, at a salary of $4,000 per year, with the provision that if at the end of five years, all his children then living so desired, it should be continued for a longer period, and further directed that at least once in the year, so much of the net profits of the business as could be divided without impairment of the capital or injury to the business, should be paid, one-fifth to his son, D. D. Weschler; one-fifth to his son, Joseph J. Weschler; one-fifth to his son, Andrew Weschler; one-fifth to his daughter, Mrs. Bena Leary, and the other one-fifth to his daughter, Mrs. Frances Brown.

He further provided that when the business should be closed up the capital invested therein should be divided into five equal parts, one-fifth to be given to each of his two sons above

mentioned, and the other two-fifths to be held by Daniel D. Weschler, and J. L. Sternberg, in trust, to pay the interest and income thereon to his daughters, Mrs. Bena Leary and Mrs. Frances Brown, during their respective lives, and at the death of either of them, the one-fifth held in trust for the mother to be divided among her children, share and share alike.

He also gave to his daughter, Mrs. Leary, the use of the house in which she resided, said property after her death to go to her children, in fee.

He gave to Mrs. Frances Brown the dwelling house and lot where she resides, for and during her life and after her death to go to her children, in fee simple, the value of these two houses and lots to be charged against the one-fifth interest in his estate given to Mrs. Brown and Mrs. Leary.

The rest and residue of his estate he divided into five parts, giving to each of his sons one-fifth in fee simple, and to Daniel D. Weschler and J. L. Sternberg, the other two-fifths in trust, the same to be invested and the net income thereof to be paid, one-fifth to Mrs. Bena Leary, and one-fifth to Mrs. Frances Brown, during the life of each of them, and at the death of either of them the one-fifth held for the mother, to be paid to her children, share and share alike.

Under the direction in said will, Daniel D. Weschler took charge of the business at the death of his father, and conducted it as manager until its sale to the American Malting Company, in October, 1897.

While acting as manager said D. D. Weschler furnished annually to the heirs and legatees a statement showing the condition of the business, which said statements were offered in evidence.

A statement showing the condition of the business October 1, 1893, gives the net profit from the business for the preceding year as $16,932.36.

A statement showing the condition of the business October 1, 1894, gives the net profit from the business for that year as $28,980.22.

A statement showing the condition of the business October 1, 1895, gives the net profits from the business for that year as $28,818.16.

A statement showing the condition of the business on Sep-

tember 1, 1896, gives the net profit of the business for that year as $42,444.18.

A statement showing the condition of the business on September 1, 1897, gives the net profits in the business as $34,557.36.

The evidence also shows that at the date of Jacob Weschler's death the net profits for the preceding year amounted to $16,932.36, being the same amount given above in the statement of October 12, 1893.

During the time Daniel D. Weschler acted as manager of the business, George W. Schlindwein had charge of the books and made all the statements furnished to the heirs. Mr. Schlindwein explains the methods by which he arrived at the profits for any given year, showing that it was ascertained by finding the difference between the cost of the raw material with expense of manufacturing and value of stock on hand added to the amount of sales received during the year.

Mr. Schlindwein, in his testimony, gives the net profits for the time the business was managed by D. D. Weschler as $130,076.37, a slight variation from the amount shown in the statement prepared by him and furnished the legatees, and which have been offered in evidence. Of this amount $44,472.45 was distributed to the legatees, the exceptants, Mrs. Brown and Mrs. Leary, receiving $8,894.49.

According to the testimony it appears that when the property was sold to the American Malting Company the executors received therefor $253,500.37 in excess of the actual cost of the plant. It is contended by the exceptants that the sum so received in excess of the amount invested in the plant should be treated as net profits and divided among the legatees, Mrs. Brown and Mrs. Leary, each being entitled to receive one-fifth thereof.

Instead of this being done, one-fifth of this amount, together with one-fifth of the balance of the $130,076.37, the net profits earned under the management of Daniel D. Weschler, was by the executors turned over to Daniel D. Weschler and J. L. Sternberg, trustees under the will, to be held by them for the benefit of exceptants during their lives, and to be paid their children at their death.

This is the principal question raised by the exceptions filed, whether the $130,076.37 and the $253,500.37 are " net profits "

within the meaning of the will of Jacob Weschler, one-fifth of which are to be given to each of.his children, or whether these sums or either of them instead of being net profits are to be treated as a part of the capital of the estate, and one-fifth thereof to be held by said trustees, as provided in said will.

Is the amount for which the plant sold in excess of the cost thereof, a part of the profit which Jacob Weschler intended should be distributed among his five children in equal shares, or did he have in mind the net earnings derived from the management of his business by Daniel D. Weschler during such time as it was conducted by him?

If instead of accepting the offer of the American Malting Company the executors had refused the same, would the increase in the value of the plant, as indicated by the offer, have been considered as profits to be equally divided among the five children of Jacob Weschler?

Was this $253,500.37 for which the property was sold in excess of its cost, a profit arising during the time business was continued, or was it a gain derived from the sale of the plant on the discontinuance of the business, and could it have been within the mind of the testator when he provided that "so much of the net profits as can be divided without impairment of the capital or injury to the business, shall be divided and paid as follows," when this gain or profit was only acquired by a discontinuance of the very business referred to?

Was this sum profit or was it a part of the capital and included within a later clause of the will which provides "when the business shall be closed up I give and bequeath the capital therein as follows : "

If this $253,500.37 was part of the capital of the business, then two-fifths thereof was properly given by the executors to J. L. Sternberg and Daniel D. Weschler, the trustees under the will.

If it was not a part of the capital, but was part of the profits from the business while conducted by Daniel D. Weschler as manager, then two-fifths thereof should be distributed to the exceptants.

This was part of the selling price of the malting plant, which consisted of the buildings, machinery, tools, horses, wagons and all things used in and necessary to carry on the malting business as it had been theretofore conducted.

It can hardly be claimed that this excess over the cost of the plant all accrued after the death of Jacob Weschler, and if it or any part thereof accrued prior to his death, that part, under the principle declared in Earp's Appeal, 28 Pa. 368, would be part of the principal fund, and would therefore be capital and not profit within the contention of exceptants.

I am of the opinion that the net annual profits derived from the business as conducted by Daniel D. Weschler, was the fund which Jacob Weschler intended to have divided annually between his children, and that he had no thought or intention of making division in any manner of any sum for which his malting plant might be sold by his executors, in excess of the cost of the same.

Unless, therefore, the rules of construction as laid down by the courts of this commonwealth, require this $253,500.37 to be treated as profits, under the terms of this will, it should not be so treated.

In the cases cited by counsel for exceptants, the income devised was the earnings of money invested in stock or bonds, and the questions decided were mostly concerning accumulations of dividends or interest thereon. This was not an accumulation in the sense of increasing the capital by combining with it certain earnings of the business, but it was an increase of the value of the capital itself, unaided by any act of the manager.

Nor do I regard this as a doubtful case or one where the will is either ambiguous or obscure, where it becomes necessary to apply the rules of construction declared in the case cited by counsel for exceptants.

The intention of the testator seems perfectly clear that his children should share equally in the profit derived from the conduct of the business under the manager he had provided by his will, and that his daughters, Frances Brown and Bena Leary, should each have the income from one-fifth of his estate after it was divided, and in addition so much of the principal of said fifth as might be necessary for her comfortable support, the balance of said principal to go to the children of said daughter, at the death of the mother.

I am, therefore, of the opinion that the total amount realized from the sale of the malting plant, was "capital" within the meaning and intention of the will of Jacob Weschler, and that

the exceptants are not entitled to any portion thereof, but that two-fifths of the sum was properly paid by the executors to J..L. Sternberg and Daniel D. Weschler, in trust, the income from one-fifth to be paid by said trustees to Mrs. Frances Brown, and the income from the other fifth to be paid to Mrs. Bena Leary during the life of each.

I am also of the opinion that Mrs. Frances Brown and Mrs. Bena Leary, the exceptants, are each entitled to receive the sum of $17,120.78 from the fund paid by the executors to J. L. Sternberg and Daniel D. Weschler, trustees, that being their respective one-fifth share of the undivided profits amounting to $130,076.37 earned during the time the business was operated by Daniel D. Weschler as manager.

Exceptions to the award of a share of the undivided profits to Frances Brown and to Bena Leary were filed by the executors and were dismissed by the court.

*Error assigned* was in dismissing exceptions to auditor's report.

*T. A. Lamb*, for appellant.

*Albert B. Osborne*, for appellee.

OPINION BY MR. JUSTICE POTTER, June 22, 1905:

The testator directed that his malting business should be continued for at least five years after his death, and that during that time so much of the net profits should be given annually to his children as could be divided without impairment of the capital or injury to the business. He further directed that when the business should be closed, the capital should be divided into five parts; two of the parts were given to trustees to pay over the interest and income thereof annually to his two daughters during their lifetime, and the principal to the children of said daughters.

The business was carried on from the death of testator, in 1893, until in 1897 it was sold out. During that period, as found by the auditor, the net profits were $130,076.37, and of this amount $44,472.45 was distributed to the legatees, which gave them each $8,894.49. If the entire amount of the profits had been distributed each would have received $26,015.27.

The auditor decided that the daughters were entitled to receive the entire sum, and awarded to each the sum of $17,120.78, that being, with the amount already paid them, the one-fifth share of the undivided profits earned during the time the business was carried on after the death of the testator. The executors excepted to the finding of the auditor in this respect, but the court below overruled the exceptions, and his action in so doing is here assigned as error.

It is argued on behalf of the executors that a portion of the profits had been, with the consent of all concerned, transferred from the profit account to the capital account by means of necessary expenditures in the enlargement of the plant before it was sold. It is true that the improvements were authorized by all the heirs. But we see nothing in the agreement which would justify charging the cost to and against the profit account. As a matter of fact it does not seem to have been so charged on the books. All the resources of the estate were apparently blended in one common fund, so that it did not appear whether the cost was paid from profits or from capital account. Nor would it appear to be of any practical importance. For the final sale of the property was made at a figure which showed a gain of $253,500.37 over the cost of the plant, and this was all treated as an increase of capital account, and the proportionate share of the daughters therein was held by the trustees, for the daughters, under the terms of the will. So that under no circumstances is there any just cause for complaint by those interested in the estate in remainder. The improvements made were considered by all concerned as beneficial to the estate, and may reasonably be supposed to have aided largely in bringing about the sale at an enhanced price. And again, as is suggested by counsel for the appellees, the fund primarily liable for the debts of the decedent, was the property, real and personal, of which he died possessed. This was sufficient to pay all liabilities and leave a large excess. So that there was no occasion to seek to transfer the burden of discharging the debts, to the profits of the business earned after the death of the testator. We coincide with the view taken by the auditor, which was confirmed by the court below. The decree of the orphans' court is affirmed, and this appeal is dismissed at the cost of the appellants.