# Parry's Estate.

*Trusts and trustees—Executors as trustees—Hotel—Enlargement of hotel—Repairs—Negligence—Surcharges.*

Where a testator devised in trust his residuary estate, including a hotel at a seashore resort, naming his executors as trustees, and the surviving trustee makes repeated unsuccessful efforts to sell the hotel, which was operated at a loss, and expends funds of the estate in making necessary repairs and in enlarging the facilities of the hotel, the trustee is entitled to credit for sums expended in making repairs necessary for the preservation of the property, but he is properly surcharged with sums expended in enlarging the property, in view of the fact that no increased returns would probably be produced by such enlargement.

Argued Jan. 7, 1914. Appeal, No. 154, Jan. T., 1913, by James Baird, from decree of O. C. Philadelphia Co., Jan. T., 1888, No. 345, dismissing exceptions to adjudication in Estate of Charles T. Parry, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication. ANDERSON, J., filed the following opinion:

The testator left an estate approximating a million and a quarter dollars in trust for the benefit of his children and grandchildren, with remainder over to their children, etc. He appointed his son and his son-in-law trustees. The son having died, his son-in-law, the present accountant, became sole trustee. Among the assets of the estate was some real estate in Beach Haven, a seaside resort on the New Jersey coast, consisting of a hotel, called "The Baldwin," and cottages and seaside lots assessed at approximately $26,000, and probably worth double that figure. At testator's death this hotel was rented. Under the terms of the will the trustees were given power to make investments. He sold the hotel for $57,000 and received $10,000 on account. The purchaser

ran the hotel for some months, made some improvements and extensions thereto, but subsequently failed; and the property was bought in by the trustees at foreclosure sale. It was then purchased by the wife of the former owner for $55,000, she paying $5,000 on account. Again the mortgage was foreclosed, and the property purchased by the trustee. It was then rented with an option to purchase, and $500 paid on account, but the party obtaining the option failed to exercise it, and the money was forfeited. The property was then rented with an option to the lessee to purchase it at $60,000, after the hotel had been rehabilitated by the accountant at an expenditure of some $36,000. This was in 1904. The option, however, was not exercised, and the lessee surrendered the lease during the middle of the summer season, leaving the hotel full of guests and with no one to manage it. The accountant, consulting with the objecting cestui que trust, and with the acquiescence of all the parties in interest, placed his son and the son of the objecting cestui que trust in the management of the hotel. They ran it for the remainder of the season and the next season. After that, the son of the objecting cestui que trust, being in poor health, withdrew, and the hotel management was continued by the son of the accountant, the hotel being run with varying success as to its immediate returns, but invariably causing loss in the cost of the upkeep of the property.

An account was filed in the summer of 1906, showing an expenditure of $36,000 and the loss of the rent of the hotel, and was confirmed without objection on the part of the now objecting cestui que trust.

Subsequently a rival hotel having been largely rebuilt, with the effect of causing a reduction in the patronage of the Hotel Baldwin, the accountant took upon himself to again rehabilitate and improve this hotel. He estimated that the expense would be in round figures $60,000; as a matter of fact, it was $78,000. The result was an improvement for a year or two in the

receipts of the hotel, showing a profit in its running; but again, upon deducting the cost of the upkeep, there remained a deficit. The accountant testified that he spoke to the objecting cestui que trust and pointed out the improvements, but that she made no answer. When his account was filed, however, she sought to surcharge him with the whole cost of the rehabilitation of the hotel and the improvements thereof, on the ground that they were unnecessary and wasteful and added nothing to the income or the value of the property.

The learned auditing judge, after a most careful and discriminating consideration of the evidence, distinguished certain portions of the expenditures as being in the nature of repairs necessary for the maintenance of the hotel, and chargeable to income; and other portions as being in the nature of improvements, and chargeable against principal. To this discriminating distinction there seems to have been no particular objection, and our attention at the argument was not directed to any error made by the auditing judge in that respect. Moreover, his findings on this subject, being largely a question of fact, are entitled to the weight of a verdict of a jury; and, in the absence of manifest error, should not be disturbed. Of the $78,401.42 expended, the auditing judge held that the expenditure of $14,183.84 was necessary for the preservation of the estate and justified in the returns the estate received therefrom; charged against income the sum of $30,292.55 which he found necessary for the running of the hotel, and surcharged the accountant with the sum of $33,925.03 expended out of principal, on the ground that it was unnecessary and unjustifiable under the circumstances of the case.

The accountant objects to any surcharge, while one of the cestui que trust and those interested in remainder after her—(two interests, one of which is the wife and children of the accountant, having made no objection)— maintained that the accountant should have been surcharged with the full amount of the expenditures.

As there is no charge of fraud, the ground upon which the surcharge was made and the additional surcharges asked is necessarily that of negligence, which has been generally but accurately defined as want of care under the circumstances—the failure to exercise common skill, common diligence and common prudence; or, as said by Mr. Justice MESTREZAT in Adams' Estate, 221 Pa. 77, "the law requires of the trustee fidelity to the trust, and the exercise of the same measure of diligence that a man of ordinary prudence may be expected to exercise in the care of his own property under the same circumstances: Jones's Appeal, 8 W. & S. 143."

The accountant points out as justification for his course the fact that this hotel was an investment of the estate made by the decedent himself, who in his will gave his trustees the right to make such investments as they deemed necessary, and, speaking generally, the right to conserve investments made by himself; that the accountant had tried to dispose of the property and had on two occasions sold it, with a net gain to the estate of some $15,000; that he had tried to rent it, had rented it, but had failed to keep the tenants; that it was necessary for the benefit of the rest of testator's real estate at Beach Haven that the hotel should be run, and that in order to keep abreast of the times and meet competition, it was necessary to improve it; that the objecting cestui que trust and her family were at this resort or at the hotel and acquiesced in the running of it, and that during the time the improvements were made, they had made no objection to the expenditure, and only found fault with it after it had been demonstrated that the expenses had not resulted in an increased revenue to the estate. He further claimed that the expenditures improved the other real estate belonging to the estate, and that under certain changed conditions the hotel in the future may be very profitably rented or sold to the advantage of the estate.

The objectors, however, on the other hand, claimed

that, as this hotel had always been run at a net loss, and as the expenditures of $36,000 some years before had not resulted in any substantial improvements to the revenue of the estate or increased its value, the whole expenditure was wasteful and that the accountant should be compelled to replace the money so expended.

As to the items of surcharge, we think the learned auditing judge was right in distinguishing between those necessary for the preservation of the property and those spent for its improvement. A large amount of money had been invested in this property; and subject, as seashore property peculiarly is, to the effects of the elements, it was necessary and wise in order to maintain the investment that those expenditures should be made which would keep the property in proper repair. In this respect the accountant was unquestionably called upon to use his judgment; and, if he had taken the other view and allowed the property to become dilapidated, it might very well be that the present objectors or the other cestui que trust and remaindermen might have attempted to surcharge him for not keeping up the property. It certainly was a case in which he was compelled to choose between the two horns of a dilemma; and we cannot say, as a matter of law, even though we ourselves might in a similar case have decided otherwise, that his course of conduct in this regard was unjustifiable.

We think that the auditing judge was right in surcharging the accountant with the amount of the principal of the estate expended by him for what he had termed improvements of the property; that is to say, the enlargement of its facilities. The hotel had always been a drag on the estate. Among the many assets which the testator left was included this unprofitable one; and, although the trustees had been unsuccessful in their efforts to get rid of it and were consequently forced to keep it among their assets, there was no reason, in the light of the history of its management, which

would justify an additional expenditure in order to enlarge its facilities. We cannot see that any careful man dealing with his own property, knowing that no income had resulted to the estate from the running of this hotel, would have put a dollar of his own into its enlargement, much less would have put into it moneys of an estate of which he was trustee. His duty was to reduce the investment, if possible, not to enlarge it.

As to the question of paying necessary expenses out of income to maintain the hotel and keeping it in running order, we have some doubt. It might well have been the course of wisdom to close its doors and not have spent another cent for maintenance; and this would probably have been the course if this estate had been a small one and the hotel had been its chief asset, or if the cestui que trusts had been strangers to this neighborhood with no interest there. It must be borne in mind, however, that the hotel had been built by the testator. He had invested largely in other assets at this seaside resort; that not only the trustee's family but the other cestui que trusts were summer residents at the place, interested in its success; that the hotel, when threatened with having its doors closed in the midst of the season, had been kept going with the advice and consent of the objecting cestui que trust and the active participation of her son; that it had been carried on and subsequently run by the trustee through his son, without her objecting; that the running of the hotel had not been objected to at the audit of the prior account; and that, when the attention of the cestui que trust was called to these expenditures, she made no objection thereto, and did make none at the audit of the third account. We cannot, therefore, say, as a matter of law, that the trustee did not have the right to take it for granted that this cestui que trust acquiesced in the expenses necessary to run the hotel and keep it in the condition it had theretofore been.

Nor do we think that the trustee should be surcharged

with the commissions. As was said, in Fross's Appeal, 105 Pa. 258,

"he may have been negligent, but he seems to have acted in good faith, without fraud or unfairness,"

and is therefore entitled to his commissions. Besides, the commissions are on income, and there is no reason to deprive him of commissions on that part of the estate which he properly administered because he has been guilty of negligence in administering the principal, and pays for his want of judgment by the surcharge.

We think, however, that the auditing judge is incorrect in his figuring attached to the adjudication. He has deducted $66,568.23 from the principal of the estate, which was credited to this improvement, and has added $78,381.42, the effect of which would be to increase the amount of principal $11,813.19. The mistake lies in the fact that he brings over from the income account the whole $30,292.55 directed to be charged against income, while as a matter of fact, $11,813.19 had already been expended out of income and not out of principal, and therefore the amount to be added to the principal account is not $30,292.55, but that sum less the $11,813.19 already expended from the income. These figures can be corrected in the schedule of distribution.

It will be noted also that the balance here includes real estate as well as personalty, which is not the proper method of accounting. In the schedule these should be separated, and a balance found of personal estate alone.

It will be noted also that the auditing judge, in his desire to do exact justice, has provided that in case a future sale of this hotel realizes a price sufficient to reimburse the estate in part or whole for the moneys spent for its enlargement, the trustee is given the right to apply to the court for reimbursement out of the fund so produced.

The court dismissed exceptions.

*Error assigned,* among others, was in dismissing the exceptions.

Opinion of the Court.                    [244 Pa.

*John G. Johnson,* and *Preston K. Erdman,* with them *Baird & Hopkinson,* for appellant.

*Owen J. Roberts,* with him *Robert W. Skinner, Jr.,* and *Jacob Snare,* for appellee.

PER CURIAM, February 9, 1914:

The order of the Orphans' Court dismissing exceptions to the adjudication of the auditing judge is affirmed for the reasons stated in the opinion by Judge ANDERSON.