Sulzer's Estate.

2

Argued May 19, 1936. Before Kephart, C. J., Schaffer, Maxey, Linn, Stern and Barnes, JJ.

 

*G. Von Phul Jones,* for appellants.

*Isaac S. Grossman,* for appellee.

Opinion by Mr. Justice Maxey, June 26, 1936:

The question involved here is whether or not item five (quoted below) of testator's will authorized trustees un-

der that will to continue testator's business, the management and control of which was left to them, also whether it authorized them by implication to advance a part of the principal of the estate at various times to continue and preserve that business.

Decedent died December 26, 1909, leaving a will probated January 4, 1910, wherein he gave his wife a life interest in his estate and made her executrix and trustee, and upon her death, his two sons, Herman and Herbert, succeeding trustees (the accountants), and provided that on the widow's death, the income should be paid to the children for life and on their death the principal should be paid to the grandchildren.

After decedent's death, the executor and other parties in interest applied to the orphans' court for the incorporation of the business under the Act of April 22, 1889, P. L. 42, and by authority of that court it was organized in April, 1910, under the name of Sulzer & Co., Inc. By the terms of the decree the entire stock of the company was issued to the executrix in consideration of the transfer from the estate of all the assets of the decedent invested in his business.

The widow, Christine L. Sulzer, who was the executrix and trustee, continued, with the assistance of the present trustees, the business until she died on March 27, 1930. An account was filed for her, as trustee, by her executors, showing her transactions as trustee of this estate up to the time of her death and by adjudication, dated April 22, 1932, the trust fund including all the capital stock of Sulzer & Co., Inc., was awarded to Herman W. Sulzer and Herbert R. Sulzer, succeeding trustees under the will of decedent. They are the accountants in the present proceeding. Fred A. Sulzer, a son of decedent, and entitled to one-fifth of the income for his life, and who is also vice-president, sales manager and director of the company, filed a petition requiring the trustees to file an account. This petition was filed on behalf of Fred A. Sulzer, life tenant, and Raymond W. Sulzer and

4

Mildred L. Shrivers, remaindermen. The account was filed on April 3, 1934, and audited by Judge ALLEN M. STEARNE. He decided that the trustees had exceeded their powers by loaning, from the principal of the trust estate to the company at various times during the depression, the cash necessary to continue the business. This cash amounted at the time of the audit to $9,422.47. He surcharged them with that amount and directed that the expenses of the accounting should be divided between principal and income, thus disallowing to this extent the credit claimed by the trustees for payments of all expenses out of principal. Exceptions were filed by the accountants to the surcharges. When the exceptions were called for argument, the accountants asked for a continuance to prepare paper books. A continuance was refused. The exceptions were dismissed "for want of prosecution" in an opinion by Judge SINKLER. Amended exceptions were later filed by leave of court and a reargument had. The exceptions were afterwards dismissed by the court in banc. In the opinion filed by Judge SINKLER for the court in banc it was held that "the auditing judge construed item five as a whole and correctly held that the authority conferred upon the trustees to make advance for the operation of the business was limited to the income." From the decree of distribution entered on February 7, 1936, as reconfirmed on March 27, 1936, this appeal was taken.

The item to which Judge SINKLER refers reads as follows: "It shall be discretionary with my executrix or her successor as to whether my present business of the manufacture and sale of gas fixtures shall be continued, but should she, or her successor determine to continue the business, then the management and control of the same shall be under their entire supervision and management. Further, in such case such amount of income from my estate as she or her successor may deem advisable is to be reserved to be applied and appropriated by her or her successor to the improvement of the said busi-

ness and the investment of additional capital by the purchase of new and additional machinery, materials, real estate, for repairs, etc., and to meet accruing liability therefor, and the net profits of the said business after making the above deductions shall be distributed in accordance with the provisions of my will hereinbefore set forth as part of the income of my estate."

Appellants contend that the above item imposes upon the trustees no limitation of the powers to use the principal when necessary to continue the business or to protect the estate from the loss of this asset but that an additional power is given to the trustees (which they otherwise would not have) to reserve and apply income "to the improvement of the said business and the investment of additional capital by the purchase of new and additional machinery, materials, real estate, for repairs, etc., and to meet accruing liability therefor," and that in the absence of this clause the trustees would have no power to use income for improvements and additional capital.

Appellants refer to item five as being divided into two clauses, the second clause beginning with the word, "Further," which begins the second sentence of the item. Appellee says: "Item five is not separated into two clauses, but is one continuous paragraph." This difference of opinion goes to the matter of interpreting the form of item five, not its substance. Whether we treat the item as consisting of one "clause" or two, it is clear to us that the first complete sentence of item five gave the executrix or her successor the right to determine whether testator's business should be continued or not, and in the event that she decided to continue it, then the executrix or her successor had the entire control and management of it. This part of item five is broad enough to confer on the executrix and her successors the power not only to carry on testator's business but also the power to subject the assets of the estate to debts contracted for that purpose.

In *Furst v. Armstrong*, 202 Pa. 348, 51 A. 996, this court said: "A testator may by his will empower his executor to carry on the business in which he is engaged at the time of his death and when he does so he subjects the assets of his estate to debts contracted for that purpose. . . . The general assets of an estate may be liable for debts incurred in the continuance of the partnership. . . . The executrix accepted the trust committed to her by the testator and exercised the power conferred upon her by the will. She took charge of and conducted the business in which her father was engaged at the time of his death. She paid the indebtedness of $60,000 incurred by the testator during his management of his affairs and for which all the assets of his estate were liable. In accomplishing this work, she contracted certain debts which the appellants, who are beneficiaries under the will, claim should not be paid out of the general assets of the estate. . . . The language . . . which confers upon the executrix authority to conduct his affairs is broad and comprehensive. She is given 'full power' to carry on his business. Everything necessary for the purpose therefor she may command and use. This is necessarily implied. In no other way could she accomplish the object of the trust. . . . It was necessary that the power of the executrix should be ample and unlimited. . . . If the contention of the appellants be sustained, she was required to do this with the capital invested in the business. But her power is not thus qualified by the will, nor is she limited to any part of the assets of the estate in executing the trust imposed by the terms of the will."

In *Parry's Est.*, 244 Pa. 93, 90 A. 443, we held that where a testator devised in trust his residuary estate, including a hotel at a seashore resort, naming his executors as trustees, and the surviving trustee makes repeated unsuccessful efforts to sell the hotel, which was operated at a loss, and expends funds of the estate in making necessary repairs and in enlarging the facilities

of the hotel, the trustee is properly surcharged with sums expended in enlarging the property, though he was not surcharged with sums expended for repairs on the property. To the same effect is *Weschler's Est.*, 212 Pa. 508, 61 A. 1091.

The part of item five which begins with the word, "Further" obviously refers to something in addition to the mere carrying on of testator's business. It indicates the grant of more power than conferred by the sentence preceding it. Under that second sentence (or "clause" as appellants call it), if the executrix wishes money for the *improvement* of the business and for "additional capital," she was, under the second half of item five, compelled to find it not in the corpus of the estate but in the estate's income. In the absence of this grant of authority the trustees would have no power to use income for improvements and additional capital: *Weschler's Est.*, supra; *Parry's Est.*, supra; *Datesman's Est.*, 127 Pa. 348, 17 A. 1086. The words in question are a grant of power over income, not a limitation of the right to use the principal.

In the instant case none of the expenditures made by the trustees, for which they are surcharged, were made for the purpose mentioned in the second part, or clause two, of item five. None of these questioned expenditures were used for improvements or additional capital. We find in the second sentence of item five no limitation on the general power given in the first sentence of the same item.

The power to continue a business implies the right to take any steps necessary for its preservation and continuation. The business could not have been continued unless the principal of the estate was advanced for the purpose of meeting current expenses during the business depression. The trustee should not have been surcharged for these advances.

The principle laid down by this court in *Furst v. Armstrong,* supra, was also upheld in *Waddell's Est.*, 196

Pa. 294, 46 A. 304. In *Mustin's Est.*, 188 Pa. 544, 41 A. 618, this court said: "To preserve an estate from great loss the personal representatives may in good faith advance money and will be protected in such advancement, and the orphans' court will see that they are reimbursed on settlement of their accounts. This has been frequently decided."

This court has repeatedly held that where trustees have acted in good faith in advancing the funds of the estate to the business, they cannot be surcharged with their loss. See *Donnelly's Est.*, 246 Pa. 308, 92 A. 306, and *Dauler's Est.*, 247 Pa. 356, 93 A. 511.

Appellee contends that Sulzer & Co., being a corporation, is "not a part of the estate." Appellants reply that although Sulzer & Co., Inc., is an entity distinct from that of the estate, yet by reason of its ownership of the entire stock and its control of the business through its trustees the business is still an asset of the estate and the trustees are entitled to use other assets of the estate sufficient to preserve it, to the same extent as they were empowered to protect any other asset of the estate and prevent its being lost by the heirs. We uphold this view. In *Stony Brook Lumber Co. v. Blackman et al.*, 286 Pa. 305, 133 A. 556, this court, speaking through Mr. Justice WALLING, said: "We are aware that a corporation has an entity distinct from that of its stockholders; this separate personality equity will disregard if necessary to do substantial justice. In *S. G. V. Co. v. S. G. V. Co.*, 264 Pa. 265, 269, [107 A. 721], we say: 'It is well stated by Judge ENDLICH, in *Kendall v. Klapperthal Co.*, 202 Pa. 596, 607 [52 A. 92], affirmed by this court, that equity looks to the substance of the transaction, not to its mere form or color, and a corporation does not lose its legally distinct and separate personality by reason of the ownership of the bulk or the whole of its stock by another, . . . nor by its joining hands with another in a common enterprise. But it is well understood that for purposes of equity, courts will look behind that arti-

ficial personality, and, if need be, ignore it altogether, and deal with the individuals who constitute the corporation'; and such is the general rule."

Exceptions were also filed to that part of the decree dividing the costs between principal and income. We think the expenses of the accounting and litigation incident thereto should be charged against principal and no part of it should be charged against income, as the only material dispute was over the proper application of principal and not over income and the account was required for this purpose only and not in the exercise of the ordinary duties of the trustees in filing an account as continuing trustees.

The decree of the court below is reversed and the record is remitted for further proceedings in accordance with this opinion; costs to be paid by the appellee.