Estate of James D. Orne, deceased. Appeal of Emily V. Hamilton, formerly Orne, and The Union Trust Company, Guardian of the minor children of James D. Orne, deceased.

*Auditor's report—Conclusiveness of—Appeals—Executors and administrators.*

Where an auditor finds from sufficient evidence certain facts from which the legal and equitable conclusion that an executor has acted in good faith in the administration of an estate ought to follow, and the auditor so finds as a matter of law, and his findings and report have been confirmed by the orphans' court, the Supreme Court will not reverse the findings unless manifest error or mistake is made to appear.

*Executors and administrators—Pledge of securities—Payment.*

Where an executor having a life interest in securities pledged for a debt pays the debt out of the estate, and subsequently pledges the securities for a debt of his own, and dies before paying the same, his executor may pay the debt out of moneys of his estate, and deliver the securities to the persons entitled to them in remainder.

Argued Jan. 9, 1899. Appeal, No. 200, Jan. T., 1898, by Emily V. Hamilton, from decree of O. C. Phila. Co., Oct. T., 1894, No. 35, dismissing exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The facts, as well as the findings of the auditor, John B. Colahan, Jr., Esq., and the exceptions thereto, sufficiently appear from the opinion of the Supreme Court.

The exceptions to the auditor's report were dismissed by the court in an opinion by ASHMAN, J. See 7 Dist. Rep. 337.

*Errors assigned* were in dismissing exceptions to auditor's report.

*John G. Johnson,* with him *George Frederick Keene* and *Charles C. Lister,* for appellants.—It was the duty of the executor to account for his receipts and disbursements in the course of the business which was carried on by him from September 13, 1894, until March 18, 1895. The case should be sent back with directions to compel such accounting.

The sale by the executor in March, 1895, in lump, of machinery, book accounts and merchandise, in ignorance of the nature of such machinery, book accounts and merchandise and of the amount of the liabilities which were to be assumed by the purchaser was improper.

It was the duty of the executor to collect, and not to sell, the book accounts, and under the circumstances which existed in March, 1895, to sell the merchandise either in the usual course of business, or only after an inventory of the same had been made.

The seventy-six shares of New York, New Haven and Hartford Railroad Company's stock which, at the decease of Orne, stood in the name of the Springfield Savings Institution as collateral security for a note of $9,100, signed by Orne individually and as executor, should have been used in the first instance in liquidation of that note, and should not have been delivered to the three children who took under the will of Orne's mother, clear of the pledge.

*John Cromwell Bell,* with him *Henry K. Fox,* for appellee.— Where an administrator acts with good faith, and with that degree of caution which prudent men exhibit in the conduct of their own affairs, he will be liberally dealt with by the court: Bosio's Estate, 2 Ashmead, 437; Bowker's Est., 5 W. N. C. 493; Neff's App., 57 Pa. 91; Getz's Estate, 6 W. N. C. 416;

Moore's App., 10 Pa. 435; Dundas's App., 64 Pa. 325; Springer's Est., 51 Pa. 342; Schofield & Sons' Assigned Est., 167 Pa. 479; Pleasonton's App., 99 Pa. 369.

Unless there is gross negligence or fraud, an executor's commissions will not be forfeited: Sourin's Est., 11 Phila. 14; Price's Est., 81 Pa. 273; Fross's App., 105 Pa. 268; Merkel's Est., 131 Pa. 585.

OPINION BY MR. JUSTICE DEAN, October 6, 1899:

James D. Orne, of Philadelphia, died on July 31, 1894, leaving a will, of which he appointed Dwight Pratt, his nephew, of Springfield, Massachusetts, and Henry S. Lee, executors. Lee having declined to accept, Pratt acted as sole executor. The testator left to his widow Emily such share of his estate as would pass to her under the intestate laws, and the remainder to his three children. For some years before his death he had been a manufacturer of hosiery in a small way, and the stock and capital in this business made up the larger part of his estate. One James H. Millhouse had been employed by him to assist in conducting his business. The executor filed an inventory of the assets of the business, amounting to $13,347.47; against this, there were outstanding bills of over $6,000, leaving the net value $6,695.56. There being considerable unworked material on hand, and the executor being of opinion that the business would sell better if kept up as a going concern, with the assistance of Millhouse, and with the consent of the widow, he continued the business for nearly a year after the death of the owner; then sold the entire assets, stock on hand, machinery and book accounts to Millhouse for $12,000. The proposition to purchase at that figure came from Millhouse, and was only accepted after a conference with the widow, who had first indicated a desire to purchase herself, but afterwards declined. During the whole period of conducting the business by the executor, all the accounts were kept with the Real Estate Title Insurance and Trust Company of Philadelphia, which company was surety for the executor, he being a nonresident of this state. These accounts, although bank accounts, nevertheless showed fully all the receipts and payments in the business. What were properly the executor's accounts had been destroyed by an accident, but substantially, they were supplied by the books of the trust company.

The executor having filed his first and final account, many exceptions were filed thereto by the widow and children.    An auditor was appointed to hear and decide on exceptions and make distribution.    It was sought, in the hearing before him, to surcharge the executor with the difference between the inventory filed and the price accepted on the sale to Millhouse, $1,347.47; also, an alleged profit of $7,000 in the business while it was carried on between the death of testator and the sale; a claim paid Millhouse of $706 for salary; the costs of audit, and certain railroad traveling expenses the executor had taken credit for.    It was further claimed, that $1,944.37, commission charged by the executor, should be stricken from the account, and further, that he should be charged with the sum of $9,850, the proceeds of certain bonds sold by him and appropriated to the payment of a note of $9,100, made and delivered to the Springfield Savings Institution by testator; and for which he had pledged as collateral, seventy-six shares of the capital stock of the New York, New Haven and Hartford Railroad.

The auditor, after a full hearing, overruled all the exceptions, and his report was confirmed by the court.    We now have this appeal by the exceptants, who prefer thirty-seven assignments of error, grouping them in their argument in five propositions.

Except as to the fifth we find nothing calling for notice or discussion by us; not that the first four embrace nothing of merit, or that they are wholly groundless, but because they depend, almost wholly, on questions of fact passed upon by the auditor and the court below.    These facts are found against the appellants; whether correctly or not, there was sufficient evidence to sustain them; assuming them to be as found, the legal and equitable conclusions drawn from them by the auditor ought to follow, and were there nothing further, we might well affirm the decree on the clear and convincing opinions of the auditor and the court below; but the answer to the question raised by the fifth proposition of appellants was not, at the argument, nor on a first perusal of the paper-books, so obvious, as that to the preceding four, therefore, we have given it further examination and notice.    That proposition is as follows:

" The seventy-six shares of New York, New Haven and Hartford Railroad Company stock, which at the decease of Orne

stood in the name of the Springfield Savings Institution as col-
lateral security for a note of $9,100, signed by Orne individually
and as executor, should have been used, in the first instance,
in liquidation of that note, and should not have been delivered
to the three children who took under the will of Orne's mother
clear of the pledge."

It appears that James D. Orne, the testator, was a son of
Lucy G. Orne, of Springfield, Massachusetts.   She died in 1887,
leaving a will of which she appointed her son James, executor;
by this will, after specific bequests, she gave to her son all the
residue of her estate for life, and at his death, directed it should
go to his children Clara, Lucy and James.   At her death, the
mother, along with other stock, owned seventy-six shares of
New York, New Haven and Hartford Railroad Company stock,
which was part of her residuary estate; she had borrowed on
her promissory note from the Springfield Savings Institution,
$12,000, and had pledged the seventy-six shares as collateral
for the loan, which at her death was unpaid.   James D. Orne, as
executor, gradually paid off this loan, so that in about four
years after his mother's death the debt was entirely extin-
guished; the collateral being thus discharged from the lien of
the pledge at once became an unincumbered part of the residu-
ary estate of the mother in the hands of her son and executor;
he was entitled by the terms of the will to a life interest in the
stock, and it went into his possession as executor.   Then, im-
mediately after, he commenced borrowing from the same bank
on notes, pledging the stock as collateral; at his death, he
owed the bank $9,100, for which the stock stood pledged; the
notes were signed by him individually and as executor of Lucy
G. Orne; the money borrowed was used, according to his own
statement to Mr. Pratt, made when he asked him to permit the
insertion of his name as one of the executors of his will, partly
in carrying on his business in Philadelphia, and partly in the
purchase of bonds of the New York, New Haven and Hartford
Railroad Company, for which stockholders had the right to
subscribe.   At his death he had in his possession these bonds
to the value of $9,850, which the executor sold, and appro-
priated the proceeds in payment of the note, thus again releas-
ing the seventy-six shares of stock from pledge.   The life estate
of Orne in this stock having terminated by his death, the execu-

tor delivered it to the executor of Lucy G. Orne for his, James's, children, to whom it had been bequeathed by his mother.

The claim made by appellants before the auditor and here, in effect, is that the stock was in fact pledged by Lucy G. Orne in her lifetime for her own debts, which in substance, through all the subsequent renewals, continued the same debt until James D. Orne's death. Apparently, on the face of the papers, this contention is plausible. The same seventy-six shares, first pledged by her, remained in the possession of the same bank with a transfer to it as collateral ; the note after the mother's death was signed James D. Orne, executor of Lucy G. Orne, and by James D. Orne. But the papers are the subject of explanation. Henry S. Lee, treasurer of the savings institution, and one of the executors of Lucy G. Orne, testifies positively, with the books of the bank before him, that her note of $12,000 was paid off gradually by her executor, James D. Orne, the last payment of $50.00 being made on June 5, 1892, more than two years before James D. Orne's death. The evidence does not show from what source the money came to pay the note, but as it was a debt of Lucy G. Orne, as her estate was a considerable one, as she owed no other debts at her death, and as it was paid by her executor, the presumption is, it was paid with money belonging to her estate. Being released, the stock at once passed into the possession of the executor, James D. Orne, who individually, by his mother's will, had in it a life estate, which would at least equal the income from the stock. With the title to the stock in that situation, and he having the possession, he at once commenced pledging it for loans to himself, and continued so to do until his death. There is no evidence that he thereafter borrowed $1.00 upon it for his mother's estate ; on the contrary, there is the evidence of his own admissions, that he borrowed for himself, and used the money for his own purposes to the amount of $9,100, which debt was unpaid when he died. It is wholly immaterial that he had no authority, as executor or as a life beneficiary, to thus pledge the stock, or that the bank had no authority to accept it as a pledge as against the children to whom it was bequeathed by their grandmother; that is not the point now. The learned auditor, on ample evidence which he fully sets out, has found the debt for which the stock was pledged at the death of James D. Orne was solely

his debt; this being the case, it was the duty of his executor to pay this debt, as he did do, and then hand over the seventy- six shares of stock, as he did do, to the executor of Lucy G. Orne, to be disposed of as her will directs.  That the executor of James D. Orne sold the railroad bonds to pay this debt is not material; they were unquestionably his own bonds, and the executor had a right to make that use of them.  That they were not included in the inventory was a mere mistake, which at the suggestion of the executor himself was corrected.

All the assignments of error are overruled, and the decree of the court below is affirmed at costs of appellant.