## Nagle's Estate.

Argued May 12, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*J. M. Sherwin,* with him *W. S. Carroll,* for appellant. —We submit that when the testator directed his executors in his will to "hold" the real estate, that word carried with it the right and obligation to pay the taxes thereon and to keep and preserve the property in substantially the same condition in which it was at the time of the death of testator. The word "hold" has been repeatedly construed by the courts, as shown by the following decisions: Whitman's Est., 195 Pa. 144; Semple's Est., 189 Pa. 385; Bowker's Est., 12 Phila. 88; Neff's App., 57 Pa. 91; Keller's App., 33 Leg. Int. 110; Derbyshire's Est., 2 Ash. 439; Wood's Est., 272 Pa. 8; Kline's Est., 280 Pa. 41; Detre's Est., 273 Pa. 341; Brown's Est., 287 Pa. 499; Furst v. Armstrong, 202 Pa. 348; Waddell's Est., 196 Pa. 294.

It would seem eminently proper and businesslike that the executors should rent a small office in a fireproof building where their records would be safe and accessible and where they could, from time to time, meet the representatives of the government on tax matters, could

also meet Mr. Wolford, whom they employed for tax matters, and to assist in their tax litigation and where their records could all be in one place.

*Charles A. Mertens,* with him *Charles A. Mertens, Jr.,* for appellee.—It is well settled that an executor or administrator may not continue the business of a decedent, and if he does so, the gain, if any, belongs to the estate, while the loss falls upon him: Allam's Est., 199 Pa. 573, 583; Moran's Est., 261 Pa. 269; Casner's Est., 2 Kulp 474.

OPINION BY MR. JUSTICE KEPHART, June 27, 1931:

Theodore N. Nagle died in 1925, leaving real and personal property amounting to well over a million dollars. The real estate consisted chiefly of a 230-acre farm located just outside of the City of Erie on which buildings, including a dwelling, were erected. The testator left the residue of his property, real and personal, in trust to the executors as trustees declaring that it should be held, invested and reinvested by the trustees or their survivor or successor, for and during the respective lives of his wife, Ellen R. Nagle, and his daughter, Edith A. Nagle, and the survivor of them. The will stated that the trustees (with the consent of Ellen R. Nagle during her life and Edith A. Nagle during her life) shall have the right to convey and give good and sufficient deeds of conveyance for any of his real estate, and when so conveyed, the proceeds of the real estate shall become a part of the corpus of the trust estate.

Since testator's death, the trustees have continued to operate the farm. The widow continued to live on the farm until the house burned; it was not insured, and the widow was compelled to move elsewhere. The executors filed their second account wherein it appeared that the farm had been operated at a net loss of approximately $6,500, one-third of which was charged against the widow's income. The accountants also charged the

estate with office and telephone rent, amounting to $2,-368.04, incurred since the first account. The office was used by the executors for the estate. These two items were excepted to by the widow, and the court below surcharged the executors for these amounts.

Where a will confers no authority to continue the testator's business, an executor, administrator, or trustee may not, as a general rule, properly do so, and, if he does, any loss to the estate occasioned by such continuation falls upon him: Moran's Est., 261 Pa. 269; Allam's Est., 199 Pa. 573, 583. This is based on the proposition that the representatives or trustees may sell the property rather than suffer such loss. Or, if they are required to carry on the business or can not sell it, they may always refuse to act as executors.

Here, however, according to the will, the executors as trustees were required to obtain the consent of the testator's widow and daughter before they could sell the real property. This limited the discretion of the trustees. Mrs. Nagle (the widow) offered no objection to the trustees' sale of the farm, but Edith Nagle, her daughter, did object, so the trustees had no authority to sell. The executors or trustees no doubt concluded that the only wise thing to do, pending consent by Edith Nagle, was to keep the farm in a fair state of repairs so as to make it attractive for sale purpose. They could not do this by letting it grow up in weeds, with the fences down and the buildings dilapidated. They were authorized and required to do what was reasonably necessary to keep up the property. It was, of course, the duty of the trustees to take every reasonable and possible means of reducing any loss the beneficiaries might suffer.

Taking the evidence as a whole and the findings of the trial judge, it would seem that the conduct of the trustees in managing the estate with respect to this property did not measure up to the requisite standard. The trustees were a trifle careless, and, while they should be punished, we can readily see that farms, perhaps, cannot be

operated in these times at a profit; the loss here, however, was too great. Entire fairness would seem to require the surcharge on this item to be modified. It is fixed at $2,500 covering the period of five years.

The trial court surcharged the executors for the office and telephone rent. Similar items were charged against the estate in the first account of the trustees, and the party here objecting did not then do so. The evidence shows that the estate, since the death of the testator, has been subjected to considerable litigation with respect to United States government taxes, and there is pending a libel suit against the estate. Papers, documents and records of the executors necessary for the handling of the estate which are exceedingly valuable occupy considerable space. One of the executors testified these documents amounted to half a truck load. It would be inexpedient and highly inconvenient for the executors to retain this mass of documents in their own private offices or in one of the buildings on the farm which had in the past been subjected to theft. The maintenance, in Erie, of a centrally located fireproof office and a telephone, at a *moderate* expenditure, would seem to be reasonable. The decree surcharging the executors for this amount is set aside.

The appellee in No. 103, January Term, 1931, Theodora Nagle, was born in March, 1897, and thereafter, in August of the same year, the testator secured a divorce from his wife on the ground of adultery. He had apparently been living apart from her under an agreement of separation since May, 1896. The testator evidently thought Theodora Nagle was not his daughter, as appears from this clause in his will. "(5) I have two children only, viz.: A daughter, Edith A. Nagle, and a son, Bailey B. Nagle; should any other person claim such relationship to me, and claim right to participate in the distribution of my estate, the claim would be a fraud, and I direct that no compromise be entered into, under any conditions or circumstances, with any one claiming

such relationship, but such fraudulent claim should be resisted to the last, the money necessary to carry out these instructions, of course, to be paid out of my estate." This clause furnishes the basis of a libel suit against the estate.

More than a year and a half after the probate of the testator's will, Theodora Nagle filed a petition for an allowance of damages in the orphans' court; the basis of the claim was that the above quoted clause constituted a false, malicious and defamatory libel of the petitioner whereby she suffered damages to the extent of $150,000 and requested that compensation for this libelous imputation against her birth and legitimacy should be allowed out of the estate. To this petition, the executors as defendant filed an answer in the nature of a demurrer, setting up four matters as defense: (1) The statute of limitations, barring an action for libel after one year after the cause of action arises, precluded this petition; (2) the right of action abated on the death of the testator; (3) the libelous matter was privileged; and (4) the orphans' court had no jurisdiction to determine the question. On July 3, 1930, the orphans' court held it was without jurisdiction to determine the question of libel and dismissed the petition but impounded $150,000 to be held by the estate until the case was disposed of in the common pleas.

Theodora Nagle instituted an action of trespass in the common pleas court on July 10, 1930. The defendant filed an affidavit in the nature of a demurrer raising questions of law and the court of common pleas overruled the demurrer and ordered the executors to file affidavit of defense on the merits within fifteen days. While the record of these proceedings in the common pleas is, of course, not before the court on this appeal, it is mentioned to show that appellee obeyed the order of the court below when distribution of the $150,000 was suspended.

The only question we pass on is the right of the court to make the order suspending distribution. This followed our practice and was proper: Mulligan's Est., 274 Pa. 398.

Decree affirmed at cost of the estate in No. 103, January Term, 1931. Decree modified in No. 104, January Term, 1931, as indicated in this opinion, costs to be paid by the estate.