## Wallis Estate.

Argued November 11, 1965. Before BELL, C. J., MUS-MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Neville B. Shea,* for appellants.

*Charles A. Shea, Jr.,* for appellant.

*Max Rosenn,* with him *John W. McCormick, Henry Greenwald,* and *Rosenn, Jenkins & Greenwald,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 22, 1966:

This is an appeal from a decree entered by the Orphans' Court of Luzerne County awarding commissions of $120,000 to Paul J. Griesmer, executor of the Estate of Nan D. Wallis, Deceased.

Nan D. Wallis, a widow and resident of Kingston, Luzerne County, Pennsylvania, died testate on May 2, 1960, leaving an estate in excess of $2,500,000. Appellee, Paul J. Griesmer, an accountant by profession and long time adviser of testatrix, was named in the will as executor. In the disposition of her estate, testatrix made specific bequests to various individuals and charities in the amount of $486,000. The residue of the estate was devised in equal shares to ten legatees.

Appellee filed his first and partial account on February 4, 1963. Appellants, William Denmon, his wife, Matilda Denmon, and The Wyoming National Bank of Wilkes-Barre, Pennsylvania, Guardian of Roxie May

and Shirley Ann Denmon, residuary legatees,[1] excepted to certain credits taken by appellee for payment of his compensation. By stipulation, the audit of the first account was closed on September 5, 1963, leaving the question of compensation for audit at the final account.

The second and final account was filed on February 5, 1964. In this account, appellee sought approval for compensation in the amount of $134,000.[2] Appellants again excepted to the amount of compensation sought. Hearings were held on the exceptions and resulted in the disallowance of $14,000 and the approval of compensation in the amount of $120,000.

Appellants, in challenging the compensation approved below, contend that the court erred in failing to disallow compensation entirely and in refusing to impose a requested surcharge. In the alternative, they urge that the compensation approved was excessive.

At testatrix's death, her estate consisted of $172,-000 in cash; $41,000 in real estate; $2,345,000 in high grade securities; and $12,000 in miscellaneous property. Her debts amounted to $30,000, leaving a net estate of approximately $2,540,000.

In the course of his administration, appellee made distribution in kind to the residuary legatees of securities inventoried at approximately $300,000.[3] The balance of the estate was liquidated and distributed in cash. As a result of the sale of securities and realty, a gain of $310,000 was realized by the estate. An ad-

---

[1] William Denmon was also a general legatee, having received a specific bequest of $100,000. Roxie May and Shirley Ann Denmon, beside their residuary interest, were the sole beneficiaries of two $30,000 trusts set up under the will.

[2] Approval was sought for a credit of $120,000, representing compensation already taken by appellee, and for an additional payment of $14,000.

[3] However, the securities were distributed at a time when their market value was approximately $50,000 below inventory.

ditional $115,000 was earned as income from dividends and interest.

Appellants predicate their claim for a surcharge on the ground that appellee failed to honor a request for distribution of the estate in kind. In support of their contention that such a request was made, they rely exclusively on an exchange of correspondence between the parties.[4] On this basis, appellants charge appellee with a breach of his fiduciary duties.[5]

In accounting for his decision to liquidate the bulk of the estate's holdings in securities, appellee took the position that the correspondence, when viewed in context, merely authorized the use of his discretion in the distribution of the estate. The court below agreed with this position, concluding that the correspondence, when

---

[4] On July 7, 1960, counsel for appellee wrote to the residuary legatees and informed them of their interests in the Wallis Estate. The letter contained the following paragraph: "Under the will, Mr. Griesmer is vested discretion and authority to make payment to the residuary heirs either in cash or in kind . . . and insofar as it is possible and feasible, he proposes to exercise his discretion by making distribution in the manner you may desire. If you would prefer to have distribution made to you in kind and are agreeable that Mr. Griesmer retain securities for that purpose, will you kindly so signify by signing your name on the copy of this letter on the line indicated for that purpose and return it . . . ."

In replying, each of the residuary legatees executed the following authorization: "I . . . express my desire that distribution of my interest in the residuary estate of Nan D. Wallis, deceased, be made . . . in securities, if feasible . . . [for the executor] to do so. . . ."

Also executed and returned by the residuary legatees was a release which purported to relieve appellee of liability in the event that securities retained for distribution in kind declined in value prior to distribution.

[5] Ordinarily, a request for a distribution in kind must be honored if the sale of the asset is not reasonably necessary to pay debts or to make distribution. *Vandergrift Estate*, 406 Pa. 14, 37, 177 A. 2d 432, 443 (1962); *Minichello Estate*, 368 Pa. 639, 644, 84 A. 2d 511, 513 (1951).

viewed in light of the surrounding circumstances, could not be construed as a request for distribution in kind. The record amply supports that conclusion.

Appellee testified that Mr. and Mrs. Denmon, in the course of various conversations, had indicated a preference for cash distributions. This testimony was uncontroverted. In addition to this testimony, the record reveals that prior to the filing of the first account, $486,000 in risk distributions[6] had been made to the specific legatees and $500,000 to the residuary legatees. These distributions consisted almost entirely of cash. Yet, no objection was made to the liquidation of the securities upon the filing of the first and partial account. The only objection raised was to the *amount* of the compensation sought, an objection which we do not deem to have embodied the challenge presently made. Likewise, although an additional $100,000 cash risk distribution was made to the residuary legatees prior to the filing of the second and final account, the objections filed to that account did not raise the failure of appellee to distribute in kind.

Although the distributions received by appellants were adequate to apprise them that appellee was proceeding with the liquidation of the estate, they were accepted without objection.[7] Not until the commencement of the hearings below was the matter first raised. The absence of dissent and apparent acquiescence of appellants in the liquidation of the estate strongly sup-

---

[6] A risk distribution is one made in advance of an accounting and order of the court. Such a distribution is made at the risk of the personal representative. See 2 Partridge-Remick, Penna. Orphans' Court Practice §14.10(a) (1961).

[7] The guardians initially appointed to represent Roxie May and Shirley Ann Denmon withdrew and appellant Wyoming National Bank was appointed substitute guardian on October 4, 1961. Acting in this capacity, it accepted the cash distributions heretofore described.

ports the position urged by appellee and adopted by the court below. Under these circumstances, we find no reason for disturbing the conclusion there reached.

Appellants next contend that the court below erred in refusing to disallow compensation, charging general mismanagement on the part of appellee.

The supervision of compensation to be awarded to personal representatives is primarily the responsibility of the court of first instance. *Jones Estate,* 400 Pa. 545, 564, 162 A. 2d 408, 417 (1960); *Bennett Estate,* 366 Pa. 232, 237, 77 A. 2d 607, 609 (1951); *Faust Estate,* 364 Pa. 529, 530, 73 A. 2d 369, 370 (1950); cf. *Fraiman Estate,* 408 Pa. 442, 445, 184 A. 2d 494, 496 (1962); *Vandergrift Estate,* 406 Pa. 14, 34, 177 A. 2d 432, 442 (1962). Absent a record of substantial misconduct,[8] the judgment of that court will not be disturbed on appeal. See *Jones Estate,* supra at 564, 162 A. 2d at 417; *Bennett Estate,* supra; *Faust Estate,* supra. Our examination of the present record leads us to conclude that there was no abuse of discretion in the refusal of the court below to disallow compensation. Cf. *Jones Estate,* supra.

We find merit, however, in appellants' complaint directed to the amount of compensation awarded. While $14,000 of the amount sought was disallowed, the compensation awarded remained excessive.

The amount of compensation to be awarded generally is dependent upon such factors as the extent and character of the work performed and the responsibility involved. *Williamson Estate,* 368 Pa. 343, 349, 82 A.

---

[8] Misconduct which has moved this Court to disallow compensation has included supine negligence, see *Kline's Estate,* 280 Pa. 41, 49, 124 Atl. 280 (1924), faithlessness and mismanagement, see *Weinstein v. Union Trust Co. of Pittsburgh,* 313 Pa. 280, 169 Atl. 101 (1933); and repeated failures to perform fiduciary duties, see *Commonwealth Trust Co. Case,* 331 Pa. 569, 1 A. 2d 662 (1938). See *Jones Estate,* 400 Pa. 545, 564, 162 A. 2d 408, 417 (1960).

2d 49, 52 (1951); *Strickler Estate,* 354 **Pa.** 276, 277, 47 A. 2d 134, 135 (1946); *Gardner's Estate,* 323 Pa. 229, 238, 185 Atl. 804, 808 (1936). Where estates of the magnitude of the present one are involved, however, the rule has evolved that an allowance of 3% on the appraised value of the corpus at the time transferred to the fiduciary for administration and of 5% on the income earned is prima facie a fair and reasonable compensation. See *Quigley's Estate,* 329 Pa. 281, 198 Atl. 85 (1938); *Gardner's Estate,* supra.

In permitting compensation in excess of this amount, the court concluded that appellee had rendered extraordinary services which warranted additional remuneration. Cf. *Gardner's Estate,* supra. We are unable to agree. Our examination of the record compels the conclusion that the additional compensation awarded was unjustified and improper.

Included among the securities held by the estate were 15,486 shares of Hercules Powder Co., Inc. These securities, inventoried at $988,200, constituted 40% of the asset value of the estate. Liquidated over a 7 month period in blocks of 200 to 300 shares, the sale of the Hercules holdings resulted in a gain of approximately $200,000 to the estate. It was in response to appellee's claimed extensive efforts in the disposition of these securities that the additional compensation was awarded below.

In accounting for the prolonged effort involved in the liquidation of these securities, appellee testified that the market for Hercules was relatively inactive and that a wholesale liquidation would have resulted in a depression in price and loss to the estate. However, appellee's own evidence establishes that he did not fully exhaust the possibility of disposing of the Hercules securities more promptly. Although inquiries had been received by appellee's broker as to the availability of further shares of Hercules, appellee declined to sell at the market, even though a profit would have

been realized. By continuing to sell in small blocks, offered at prices slightly higher than the market, appellee sought to cause an advance in the price at which the securities could be sold. Thus, in the face of the testimony of appellee's own expert that at one point in the process, when the inquiries were received, the estate's remaining Hercules holdings could have been profitably liquidated, appellee continued to prolong the process of disposing of the securities.

While appellee's plan to maximize profit may have been adopted in good faith, his primary duty was to marshal the assets and to liquidate and terminate as soon as possible. *Jones Estate,* 400 Pa. 545, 560, 162 A. 2d 408, 416 (1960); *Kohler Estate,* 348 Pa. 55, 33 A. 2d 920 (1943). By prolonging the liquidation of the Hercules holdings in order to maximize the profit, appellee unnecessarily exposed the estate to losses in the event the market declined. His action in this respect was tantamount to an additional investment in the market and was improper. Cf. *Mellier's Estate,* 312 Pa. 157, 163, 167 Atl. 358, 360 (1933).

A serious question also arises regarding appellee's treatment of certain tax matters. In 1962, although the estate was in a 49% bracket for federal estate tax purposes and a 90% bracket for federal income tax purposes, appellee elected to claim certain administrative expenses on the estate tax return rather than on the income tax return. As a result, deductions available to the estate to reduce its tax liability were not properly utilized. Moreover, although the record indicates that cash distributions to the legatees were made in 1961, no effort was made to claim a deduction for such distributions on the estate's federal income tax return for that year. As a result, excessive taxes were paid in 1961.[9]

---

[9] Appellee's explanation for his failure in this regard was that he did not feel it appropriate to inquire of the legatees as to their

In determining whether the court below abused its discretion in awarding additional compensation, we examine the record as a whole in order to evaluate the totality of the services rendered. Our examination compels the conclusion that the additional compensation here awarded was not warranted.

Decree vacated and the case remanded for further proceedings consistent herewith. Costs to be divided.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

personal income tax status. Thus, he claimed that he was unable to determine whether the legatees would have been benefited by having the estate take a deduction for the cash distributions, leaving each legatee to bear his own tax burden. Because all of the legatees were of modest means, and would have benefited by paying the tax individually, the court below directed appellee to amend the 1961 return and to seek a refund for the estate for these distributions.