409 A.2d 357

## In re ESTATE OF Carl J. KURKOWSKI, Deceased.

## Appeal of Ellen SIMON.

Supreme Court of Pennsylvania.

Submitted Sept. 24, 1979.

Decided Dec. 21, 1979.

Reed J. Davis, Davis & Mazzotta, P. C., Pittsburgh, for appellant.

Richard E. Myers, Bertani, Myers & Makoski, Greensburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Appellant-administratrix, Ellen Kurkowski Simon, appeals from a decree of the Court of Common Pleas of Westmoreland County, Orphans' Court Division, dismissing exceptions to the court's decree nisi surcharging her for improper administration of the estate of her husband, Carl J. Kurkowski, upon consideration of objections to the final account.

Carl J. Kurkowski died intestate on November 22, 1973, survived by his wife, the administratrix, and two minor sons from a prior marriage, Carl W. and Wayne Kurkowski. At the time of his death, decedent was president and sole shareholder of Monroe Cycle Center, Inc. which was in the business of selling and servicing motorcycles. The business was valued in the estate inventory by administratrix at $43,797.88. Decedent also owned a home valued at $75,-000.00, subject to a mortgage, in addition to furniture, fixtures, and tools. Further, the decedent's life was insured for approximately $90,000.00 of which approximately $75,-000.00 was paid to Monroe Cycle Center, Inc. as beneficiary. The administration of the estate was undertaken by Ellen Kurkowski Simon in January 1974 upon the posting of a $500.00 bond.

After her husband's death, Ellen Kurkowski Simon was elected president, secretary, and treasurer of Monroe Cycle Center, Inc. Prior to his death, she had served as a corporation's vice-president and had worked part-time in the business. Shortly after her election, the two other members of the Board of Directors, including the attorney for the estate, resigned. Thereafter, the administratrix ignored corporate procedures and formalities. The administratrix paid herself a salary in excess of $33,000.00 during the twenty-month period she continued to operate the business. One of decedent's sons worked part-time in the business as a mechanic and received compensation of $1,148.86. Administratrix utilized a car titled in the corporate name for her personal use and subsequently traded it in on a new car which she titled

in her own name without any accounting to the corporation for the value of the car. She paid the decedent's funeral bill from the corporate assets and subsequently included the bill in her final account as an expense of the estate without having repaid the corporation the cost of the funeral.

The business operated at a continuing loss for the entire twenty-month period. During this period, administratrix made no attempt to sell the business or its assets. She testified she intended to operate it indefinitely. The record indicates some attempts to sell were made after administratrix closed the business. However, when these efforts were not successful, administratrix made no provision for disposition or liquidation of the corporate assets or for payment of the corporate debts. At the time administratrix closed the doors of the business, the corporate accounts reflected over $120,000.00 in assets.

In June 1976, nine months after it ceased operating, the corporation was placed into state receivership to avoid the landlord's execution on a judgment for past due rents. Several months later, all of its assets were sold by the receiver for $22,759.00. This fund was exhausted after the payment of administrative expenses and priority claims including $5,783.25 to the estate for reimbursement of rents advanced. In the interim, the house was sold and administratrix posted an additional bond.

In October 1976, decedent's sons petitioned for an accounting of the estate which was filed by administratrix in January 1977. Objections to the accounting were sustained in part and the court entered a decree directing administratrix to perform certain administrative tasks and surcharging her $119,000.00 for having continued to operate the solely owned corporation, which was the principal asset of the estate, without court approval as required by the Pennsylvania Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 3314 (1975). The amount of the surcharge was determined by the value of the capital stock of the corporation at the time of decedent's death—viz. $43,000.00—and the $76,000.00 paid into the corporation from insurance proceeds which

resulted in total assets in the corporation of $119,000.00 at the time of death. Exceptions to the decree were dismissed and administratrix appealed.

The court below concluded administratrix should not have continued to operate decedent's solely owned corporation without first securing the court's authorization as required by 20 Pa.C.S.A. § 3314 (1975).[1] In this appeal, administratrix argues the court's application of section 3314 to a corporation was error. We need not decide this question. Even assuming the statutory procedures contained in section 3314 were not applicable to decedent's business,[2] administra-

1. 20 Pa.C.S.A. § 3314 provides as follows:
 "3314. Continuation of business
 "The court, aided by the report of a master if necessary, may authorize the personal representative to continue any business of the estate for the benefit of the estate and in doing so the court, for cause shown, may disregard the provisions of the governing instrument, if any. The order may be with or without notice. If prior notice is not given to all parties in interest, it shall be given within five days after the order or within such extended time as the court, for cause shown, shall allow. Any party in interest may, at any time, petition the court to revoke or modify the order. The order may provide:
 "(1) for the conduct of business, by the personal representative alone or jointly with others, or, unless restricted by the terms of the governing instrument, as a corporation to be formed;
 "(2) the extent of the liability of the estate or any part thereof, or of the personal representative, for obligations incurred in the continuation of the business;
 "(3) whether liabilities incurred in the conduct of the business are to be chargeable solely to the part of the estate set aside for use in the business or to the estate as a whole;
 "(4) the period of time the business may be conducted; and
 "(5) such other regulations, including accountings, as the court shall deem advisable."

2. Administratrix maintains that "business" as used in section 3314 refers to unincorporated associations. This narrow meaning is derived by construing section 3314 together with section 3315 which provides for incorporation of the estate's business. Administratrix argues that, for the sake of consistency, "business" must not refer to corporation in either statutory provision.
 The argument ignores the fact that section 3314 refers to "any business" which, by its terms, may or may not be incorporated, while section 3315 refers to "the business" which impliedly must not already be incorporated. While we need not so rule to decide this case, an interpretation contrary to administratrix's is suggested by the different language and by other authorities. See, e. g., Bogert,

trix nevertheless breached her common law fiduciary duty in failing to liquidate the estate for purposes of distribution to decedent's heirs and, therefore, is chargeable with the losses incurred.

A decedent's personal representative is under a duty to take custody of the estate and administer it in such a way as to preserve and protect the property for distribution to the proper persons within a reasonable time. *In re Wallis' Estate*, 421 Pa. 104, 218 A.2d 732 (1966); *Miller's Estate*, 345 Pa. 91, 26 A.2d 320 (1942). In the discharge of this duty, he is regarded as a fiduciary and is held to the highest degree of good faith. Moreover, he will be required to exercise the care and diligence which prudent persons ordinarily exercise in their own affairs. A personal representative who fails to use common skill and ordinary business caution may be held liable for losses to the estate which result therefrom. *Miller's Estate*, supra; *Istocin's Estate*, 126 Pa.Super. 158, 190 A. 382 (1937). See also 33 C.J.S. § 184; 31 Am.Jur.2d, Executors and Administrators, §§ 216–218. *Cf.* Scott on Trusts, Vol. 2, § 201 *et seq.* (1939); Restatement of Trusts 2nd § 205 (1959).

The personal representative's duty to settle the estate must be viewed with reference to the situation of the assets at the time of decedent's death. Thus, he has no duty to carry on a business conducted by the decedent. On the contrary, a personal representative breaches his trust if he continues to operate a trade or business on behalf of an estate in the absence of testamentary direction, see *In re Sulzer's Estate*, 323 Pa. 1, 185 A. 793 (1936); *Furst v. Armstrong*, 202 Pa. 348, 51 A. 996 (1902), court order, see *Markle's Estate*, 182 Pa. 378, 38 A. 612 (1897), or the consent of all interested persons, see *Semple's Estate*, 189 Pa. 385, 42 A. 28 (1899); *Orne's Estate*, 7 Pa.Dist. 337, aff'd 192 Pa. 626, 44 A. 287 (1894). See also *Mellott v. United States*, 156 F.Supp. 253 (1957), aff'd 257 F.2d 798 (1958), cert. den. 79 S.Ct. 96, 358 U.S. 864, 3 L.Ed.2d 98, reh. den. 79 S.Ct. 228,

Trusts & Trustees 2d Ed. § 573 (court's power to authorize continuance applies, inter alia, to the continuance of a business through complete or majority stock control).

358 U.S. 913, 3 L.Ed.2d 234. If he does so, he will be liable for any loss thereby resulting to the estate. *Nagle's Estate*, 305 Pa. 36, 156 A. 309 (1931); *Moran's Estate*, 261 Pa. 269, 104 A. 585 (1918); *Fulmer's Estate*, 243 Pa. 226, 89; *Istocin's Estate*, supra, 126 Pa.Super. 158, 190 A. 382 (1937); *Barry Estate*, 11 Lebanon County Law Journal 1 (1965).

This general rule is subject to the limitation that the personal representative may continue operating a business of the decedent for a limited time without liability for the purpose of selling the business as a going concern or winding up the business by converting the assets into cash or performing existing contracts of the decedent. See *Shane Estate*, 63 Pa. D. & C.2d 177 (Mont.Co.1973); *Branagan's Estate*, 78 Mont.Co.L.R. 51 (1961); *Jurkowitz v. Jurkowitz*, 44 Lack.Jurist 266 (1940). See generally, 33 C.J.S. §§ 193–197; 31 Am.Jur.2d 318, Executors and Administrators, §§ 220–226; 58 A.L.R.2d 365; Bogert, Trusts & Trustees 2d Ed. §§ 571–579.

In this case, administratrix clearly breached her fiduciary duty as personal representative of the decedent by continuing to operate the business at a loss for a period of twenty months after decedent's death while realizing personal gain in the form of salary and fringe benefits and by eventually abandoning the business without making provision for disposition or liquidation of its assets or payment of the corporate debts.

Administratrix argues she should not be liable to the heirs for any loss sustained by continued operation of the business since they consented both expressly and implicitly to the continuance. A personal representative relying on consent for authority to continue a business must show the consent of all interested parties was procured or given after full information and a fair representation of the risks involved was communicated to them. See 31 Am.Jur.2d § 222. Neither the express nor implied consent of decedent's minor sons was established in this case. Administratrix does not contend Carl and Wayne Kurkowski were participants in operating the business. In 1974, Carl worked in the business

part-time as a mechanic and earned $1,148.86 while administratrix drew a salary of $23,100.00 for that year. Administratrix testified that she was not requested to sell or liquidate the business prior to June 1975 by decedent's sons or their counsel and that Carl wanted to keep the business. This evidence, without more, was not sufficient to establish consent by all the interested parties. Thus, administratrix cannot be relieved of liability for the losses incurred. Compare *Clabby's Estate*, 338 Pa. 305, 12 A.2d 71 (1940); *Semple's Estate*, supra; *Orne's Estate*, supra; *Estate of Longnecker*, 54 Dauph.Co.Rep. 24 (1943).

 Finally, administratrix argues the court below erred in calculating the amount of the surcharge. We find no error in the court's surcharge of administratrix for the full loss of the value of the corporation at the time of decedent's death plus the addition to capital resulting from insurance proceeds paid to the corporation.

Decree affirmed. Costs on appellant.

MANDERINO, J., did not participate in the consideration or decision of this case.