J-A24044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF GEORGE STEWART, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ARTHUR STEWART | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2046 EDA 2022 |

Appeal from the Order Entered May 31, 2022
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s):  1244 DE 2018

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED AUGUST 30, 2024**

Arthur Stewart ("Arthur") appeals from the order[1] overruling in part[2]

and sustaining in part the objections filed by petitioners Charles Stewart

("Charles") and Rodney Stewart ("Rodney") (collectively "Appellees") to

_____

[1] The order in question is appealable as of right.  **See** Pa.R.A.P. 342(a)(1) ("An appeal may be taken as of right from the following orders of the Orphans' Court Division: [a]n order confirming an account[] or authorizing or directing a distribution from an estate or trust").

[2] The Orphans' Court overruled Appellees' objection to the transfer of the decedent's residence to Arthur in the fall of 2017.  **See** Orphans' Court Opinion, 1/6/23, at 4.  Appellees have not appealed that ruling.  Therefore, in the interest of clarity, we will not discuss the facts and evidence underlying that transfer.

Arthur's first accounting of the estate of their father, George Stewart ("decedent"), who died intestate.[3]  We affirm.

Decedent died on December 21, 2017.  **See** Accounting, 10/5/21, at 1. Approximately one week prior to decedent's death, allegedly pursuant to a power of attorney ("POA"),[4] Arthur removed $100,000.00 from the decedent's Wells Fargo Bank account.  **See** N.T., 3/8/22, at 8-9, 24-25, 27, 30.  Arthur first deposited the $100,000.00 in the decedent's Navy Federal Credit Union account and then transferred the funds to Arthur's personal Navy Federal Credit Union account.  **See id**.  In the weeks preceding the decedent's death and once in 2018, Arthur paid a total of $37,373.50 in funeral expenses.  **See** Accounting, 10/5/21, at 4.  On January 8, 2018, Arthur made an "early disbursement" to Rodney in the amount of $8,500.00.  **See id**. at 6.

On April 23, 2018, the Register of Wills of Philadelphia County appointed Arthur as administrator of the decedent's estate, upon the renunciation of the other interested parties.  **See** Orphans' Court Opinion, 1/6/23, at 2.  Appellees

---

[3] Andrew Stewart, the decedent's other son did not participate in these proceedings and is not a party to the instant appeal.

[4] Arthur claimed the decedent executed a POA in his favor in October 2017. **See** N.T., 3/8/22, at 27.  Arthur alternately claimed he removed the funds pursuant to either that POA or pursuant to a form provided by Wells Fargo Bank.  **See id**. at 30-31.  Arthur did not provide a copy of either the POA or the Wells Fargo form to the Orphans' Court.

- 2 -

filed petitions seeking to remove Arthur as administrator[5] and seeking an accounting from Arthur. *See id*. at 2-3. Following several delays, some caused by the Covid-19 pandemic, Arthur filed an accounting on October 5, 2021. *See id*. at 2-3. Appellees subsequently filed objections. The Orphans' court held a trial in March 2022. Thereafter, it sustained three of Appellees' objections. It concluded the transfer of $100,000.00 from the decedent's account to Arthur's account was improper. *See id*. at 5.[6] It held what Arthur claimed was an early principal disbursement to Rodney was not allowed as it was made prior to Arthur's appointment as administrator of the estate and was not an early distribution but rather payment of a personal debt Arthur had incurred to Rodney. *See id*. Further, it disallowed almost $27,000 of the funeral expenses because they were either paid prior to decedent's death or were incurred for the benefit of individuals other than the decedent. *See id*. By a May 2022, adjudication and decree, the account was returned and unconfirmed. *See id*. at 5-6. Despite this, the trial court ordered distribution

_____

[5] By agreement of the parties, the Orphans' Court did not rule on the petition to remove Arthur as administrator. *See* N.T., 3/8/22, at 132-42.

[6] The Orphans court also disallowed various other expenses, which are not at issue in the instant appeal. *See* Orphans' Court Opinion, 1/6/23, at 5.

of the estate once Arthur paid the surcharges. ***See id***. This timely[7] appeal

followed.[8]

Arthur raises the following issues for our review:

1. Is the [Orphans'] Court's finding that the withdrawal of the $100,000.00 from Wells Fargo Advisors account by an authorized signor was the result of undue influence supported by substantial evidence where no objection asserting undue influence or impropriety regarding the transfer was before the court, no evidence was submitted concerning the transfer at trial, and the same funds were deposited in the decedent's Navy Federal account and included in the [accounting]?

2. Did the [Orphans'] Court deprive Arthur [] of his rights to due process and fundamental fairness by examining the trial record after the trial on the administrator's account was over as if an agent's account and activities were before the court without providing notice and an opportunity to be heard?

3. Did the [Orphans'] Court commit error and abuse its discretion in disallowing the funeral bill based on its finding that it was paid before death where the document admitted into evidence (Exhibit 0-4), although dated before death, shows the entire balance due the week after death and the uncontradicted testimony of the accountant established payment was made after death?

4. Did the [Orphans'] Court commit error in disallowing the claim for partial distribution of $ 8,500.00 to an heir/brother in January 2018 because the payment was made prior to the administrator's appointment?

Arthur's Brief at 4 (capitalization and punctuation regularized).

Our scope and standard of review are well settled:

_____

[7] The Orphans' Court dated the adjudication and decree May 27, 2022. However, the court did not docket it until May 31, 2022. Thus, the notice appeal filed on June 30, 2022, was timely.

[8] Arthur and the Orphans' Court complied with Pa.R.A.P. 1925.

[w]hen reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination. When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (*en banc*) (citations and quotation marks omitted; paragraph division altered).

In his first issue, Arthur contends the trial court erred in concluding he misappropriated $100,000.00 from the decedent's estate by transferring the funds from decedent's Wells Fargo account to Arthur's own Navy Federal Credit Union account. *See* Arthur's Brief at 10-18. Arthur makes multiple arguments in support of this position, complaining the issue was not properly before the Orphans' Court because it concerned events prior to the decedent's death. *See id*. at 10-12. Arthur claims the decision he exercised undue influence over the decedent in obtaining the POA is inconsistent with the Orphans' Court ruling that he did not exercise undue influence over the decedent with respect to the transfer of the decedent's home to Arthur. *See id*. at 10-13. Arthur acknowledges that transferring the decedent's funds to

- 5 -

Arthur's personal account was a "complication," but contends the money was appropriately used to pay estate expenses. *See id*. at 14-18.

Initially, we note in both in this issue and in Arthur's second issue, Arthur ignores *he agreed* to litigate both issues related to his actions while acting pursuant to the POA and those occurring after the decedent's death. *See* N.T., 3/8/22, at 143-47. As the Orphans' Court stated in its opinion, the parties "made an agreement on the record during the trial . . . to accept a global decision by the [Orphans'] Court *in lieu* of filing a separate proceeding for an accounting regarding any matter involving said [POA]." Orphans' Court Opinion, 1/6/23, at 2 n. 1 (italics added).

The trial court explained its reasoning as follows:

> [T]he [Orphans'] Court is unable to determine the validity of Arthur's claim that he acted under a [POA] as no such document was submitted into evidence at the time of trial or in any of the filings. However, it is highly improbable that the [POA] granted [Arthur] the power to transfer $100,000.00 of decedent's funds directly to himself when decedent had four children living at the time of his death and no testimony to support such a claim was presented at the time of trial. Under the intestacy statute, each of the decedent's four surviving children would be entitled to an equal share of his estate. *See* 20 Pa.C.S.A. [§] 2103. [Arthur] knew that decedent's estate would be distributed equally among his children as noted in his testimony at the time of trial.
>
> In transferring the money only to himself and making only a partial distribution to one of his three siblings, and intestate beneficiaries, [Arthur] deviated substantially from the intent that Pennsylvania presumes when a person dies intestate and from the estate plan he believed the decedent himself created prior to his death. There is no discernible purpose in having transferred the funds to himself than disinheriting [Arthur's] siblings as he made no attempts to make full and proper distributions to any of his siblings. Using his power as agent under [POA] to disinherit his

- 6 -

three siblings based only on his evident conflicts with them is an action that cannot be characterized as being taken in good faith. As such, [Arthur] breached his fiduciary duty to attempt to preserve the decedent's estate plan and acted beyond the powers granted to him by the decedent. . . . It is not reasonable or prudent for any person to make such a large transfer of funds of an estate into a personal bank account when there are numerous heirs to the estate who are entitled to a portion of such funds and the risk of liability would more than likely outweigh the benefits of direct access to such funds. It is clear from the record that [Arthur] acted without the guidance of the principal here and rather, on his own in disregard to preserving the estate.

Orphans' Court Opinion, 1/6/23, at 12-13 (capitalization and citation format regularized, record citation omitted).

We have reviewed both the law and the record and discern neither an error of law nor an abuse of discretion by the Orphans' Court. It is evident that Arthur did not appreciate the nature of his role as fiduciary. As such, Arthur had a duty to administer decedent's assets in such a way as to preserve and protect them for distribution to the proper persons. **See In re Kurkowski's Estate**, 409 A.2d 357, 360-61 (Pa. 1979). Our Supreme Court has stated in discharging this duty, an executor "is regarded as a fiduciary and is held to the highest degree of good faith." **Id**. at 361. An executor is required to exercise the same degree of judgment, skill, care, and diligence that a reasonable or prudent person would ordinarily exercise in the management of his own affairs. **See In re Estate of Campbell**, 692 A.2d 1098, 1101-02 (Pa. Super. 1997).

The Orphans' Court specifically held Arthur had co-mingled estate funds with his personal funds. **See** Trial Court Opinion, 1/6/23, at 12-13. It further

found Arthur had attempted to disinherit the other estate beneficiaries. *See id*. It noted Arthur had used estate funds to pay off his personal debt to Rodney, as well as other personal bills. *See id*. at 12-13, 23. Our review of the record also shows Arthur used the funds to give gifts to persons not designated as beneficiaries under Pennsylvania law at the expense of the legitimate heirs. *See* Accounting, 10/5/21, at Supplemental Statement of James McGarrity; N.T., 3/8/22, at 100-01.

The record supports the Orphans' Court's findings that Arthur, in derogation of his duties as administrator of the estate, wrongly transferred $100,000.00 in estate funds into his personal accounts and used much of those funds for his personal benefit, and to the benefits of non-beneficiaries of the estate.

Moreover, "it is well[ ] settled in this Commonwealth that a fiduciary who has negligently caused a loss to an estate may properly be surcharged for the amount of such loss." *Estate of Lohm*, 269 A.2d 451, 454 (Pa. 1970). A surcharge is the penalty imposed for the failure to exercise common prudence, common skill, and common caution in the performance of a fiduciary duty and is imposed to compensate beneficiaries for a loss caused by a fiduciary's lack of due care. *See In re Estate of Schultheis*, 747 A.2d

918, 927 (Pa. Super. 2000). Thus, the Orphans' Court properly surcharged Arthur for his misuse of the funds. Arthur's first issue warrants no relief.[9]

In his second issue, Arthur contends the Orphans' Court violated his due process rights and his right to fundamental fairness by examining Arthur's actions taken during the time he was acting under the alleged POA. *See* **Arthur's Brief** at 18-30. Prior to addressing the merits of this claim, we must address whether Arthur properly preserved it. *See*, *e.g.*, *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007) (explaining "[t]he fact [a]ppellants filed a timely [court-ordered] Pa.R.A.P. 1925(b) statement does not automatically equate with issue preservation."). To preserve a claim for appeal, an appellant must include it in his court-ordered Rule 1925 concise statement of errors complained of on appeal:

> Rule 1925 . . . states that **"[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."** Pa.R.A.P. 1925(b)(4)(vii). In *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." *Lord*, 719 A.2d at 309. This Court has held that "[o]ur Supreme Court intended the holding in *Lord* to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in *automatic waiver* of the issues raised.'" *Greater Erie Indus. Dev. Corp.*

---

[9] Because we agree with the Orphans' Court that Arthur breached his fiduciary responsibility to the estate, we need not address Arthur's claim the Orphans' Court erred in finding he exercised undue influence over the decedent.

***v. Presque Isle Downs, Inc.***, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original).

***U.S. Bank, N.A. v. Hua***, 193 A.3d 994, 996-97 (Pa. Super. 2018) (some citations omitted, emphasis added); ***see also Greater Erie Indus. Dev. Corp.***, 88 A.3d at 224 ("it is no longer within this Court's discretion to ignore the internal deficiencies of Rule 1925(b) statements.").

In addition,

[R]ule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all.

***Tucker***, 939 A.2d at 346 (citations omitted).

Although Arthur filed a Rule 1925(b) statement, he never raised a claim that the trial court violated his right to due process and fundamental fairness by examining Arthur's actions during the period he held the decedent's POA. ***See*** Arthur's Brief at 18-30; Concise Statement of the Errors Complained of on Appeal, 8/24/22, at 1-3. Thus, the Orphans' Court did not address this issue in its opinion. ***See generally***, Orphans' Court Opinion, 1/6/23, at 1-24. Accordingly, Arthur waived his second issue.[10]

---

[10] As discussed above, Arthur's attempt to disavow the agreement made at trial to litigate all issues is, at best, disingenuous.

In his third issue, Arthur maintains the Orphans' Court erred in concluding that $7,052.50 of the decedent's funeral expenses owed to Francis Funeral Home ("the bill") was paid prior to his death.[11]  **See** Arthur's Brief, at 30-32.  Arthur concedes the accounting listed the bill as paid on December 12, 2017, which is prior to the decedent's death, but contends this was a mistake.  **See id**. at 30.  Arthur also acknowledges his testimony on the issue was equivocal, at one point he said the bill was paid prior to the decedent's death, at another point he said it was paid after decedent's death.  **See id**. at 31; N.T., 3/8/22, at 70-72.[12]

The Orphans' Court disagreed, stating:

> [i]t is long-standing Pennsylvania common law that where evidence is established to show that goods and/or services had been rendered to and for the benefit of a decedent prior to the date of death and the services had been paid for prior to the date of death, any such claim against the estate is disallowed as the amount was paid prior to the death of decedent.  **See In re**

---

[11] Arthur does not challenge the Orphans' Court's decision concerning the remaining funeral expenses.

[12] Arthur claims trial exhibit 0-4, a bill from Francis Funeral Home, proves his claim, as the bill shows a balance owing after the decedent's death.  **See** Arthur's Brief at 30-32.  However, the trial exhibits are not included in the certified record.  This Court made inquiry to the trial court to obtain the exhibits, but the attempt was unsuccessful.  We have clearly stated it is an appellant's responsibility to ensure that the certified record contains all documents necessary to ensure that this Court is able to review his claims.  **See Mazzarese v. Mazzarese**, --- A.3d ---, 2024 WL 3405622, at *8 (Pa. Super. Jul. 15, 2024).  Arthur attached a copy of the exhibit to his reproduced record, but any documents that are contained in the reproduced record but are not a part of the official certified record do not exist.  **See id**.  Therefore, we cannot consider his argument that the exhibit proves his claim that the bill was paid after the decedent's death.

> *Moore's Estate*, 36 A.2d 812 (Pa. 1944)[.] An estate is only liable for debts of the decedent due at the time of death. *See Appeal of Demmy*, 43 Pa. 155 ([]1862). . . .. A claim against a decedent's estate can only be established "by evidence which is clear, direct, precise and convincing." *Petro v. Secary Estate*, 170 A.2d 325, 327 (Pa. 1961).
>
> Here, according to the account and the referenced exhibit O-4 presented at the time of trial, Francis Funeral Home was paid $7,052.50 on December 12, 2017. *See* Arthur Stewart Testimony, Trial Transcript, page 70-71 (March 8, 2022); Trial Exhibit O-4 (exhibit was identified as a bill from Francis Funeral Home). . . ..
>
> As previously stated, the date of death of the decedent was December 21, 2017. As such, the aforementioned funeral-related expenses in the amounts of $7,052.50 [was] proven at the time of trial and were paid prior to the date of death of the decedent and [was] correctly disallowed from being included in the estate.

Orphans' Court Opinion, 1/6/23, at 19-20 (capitalization, punctuation, and citation format regularized).

We discern neither an error of law nor an abuse of discretion by the Orphans' Court. The record reflects the accounting, which Arthur signed and verified as being "true and correct," shows the bill was paid on December 12, 2017. Accounting, 10/5/21, at 4, verification. Arthur's testimony about when he paid the bill was vague and contradictory. *See* N.T., 3/8/22, at 70-76. While Arthur provided proof of payment for other funeral expenses (which clearly showed funeral expenses billed in late 2017 were paid prior to the decedent's death, and expenses billed later were paid following the decedent's death), he did not provide proof of payment for the bill in question. *See id*. Thus, we find Arthur did not establish by "clear, direct, precise[,] and

convincing" evidence that he paid the Francis Funeral Home bill after the decedent's death. *Petro*, 170 A.2d at 327. Arthur's third claim does not merit relief.

In his fourth and final issue, Arthur claims the Orphans' Court erred in disallowing his partial distribution to Rodney because it was made prior to his appointment as administrator. *See* Arthur's Brief at 32-35. Specifically, Arthur contends "[d]istributions made by the personal [r]epresentative or the person seeking to be the personal representative are made 'at risk', but they are not automatically void as a matter of law." *Id*. at 33.

The trial court explained:

> Here, this court disallowed an early, partial principal distribution made to Rodney [] in the amount of $8,500.00 on January 18, 2018, as the payment was made prior to [Arthur's] appointment as personal representative. Arthur [] was not appointed administrator of the estate [decedent] until April 23, 2018. The only justification [Arthur] offers for this early, partial distribution made to Rodney [] is that Rodney [] is an heir and was entitled to receive the funds. ***However, [Arthur] stated at trial that he was only able to make such distribution at the time as it was made after he transferred the $100,000.00 to himself***, . . . and as previously discussed, was a violation of his fiduciary duties . . ..

> \* \* \* \* \*

> In further evidence of the improper early partial distribution, Rodney [] testified at the time of trial that such distribution was intended as a repayment of a personal debt which [Arthur] owed Rodney []. Rodney [] testified that he was owed a total of $7,000.00 and the remaining $1,500.00 was because "[Arthur] said it was just that he wanted to give [Rodney] something." The [Orphans'] Court found such testimony credible. As such, even if [Arthur] had been appointed administrator of the estate at the time of the distribution, it is unlikely any court would find payment

- 13 -

of an administrator's personal debt to be a lawful distribution made from an estate. Moreover, [Arthur's] claim that he made this distribution to Rodney [] as he was a lawful intestate heir is not a persuasive argument as there are two other heirs who did not receive an early, partial distribution and there was no circumstance proven that made said distribution necessary for purposes of preserving the estate.

Orphans' Court Opinion, 1/6/23, at 22-23 (capitalization and punctuation regularized, record citations omitted, emphasis added).

After a thorough review of the pertinent law and the record, we discern neither error of law nor abuse of discretion in the trial court's reasoning. This Court has long held, "[w]hile there may be a partial distribution even though the legatees are not all ascertained, the time of distribution and the conditions that may be imposed in such a case are matters resting in the sound discretion of the orphans' court." *In re Sprissler's Estate*, 27 A.2d 51, 51 (Pa. 1942) (citation omitted). Thus, the Orphans' Court "has discretion to impose appropriate conditions to any such partial distribution to protect the [e]state itself." *In re Estate of Sterchak*, 2022 WL 17258666, at *3 (Pa. Super. 11/29/22) (unpublished memorandum).[13] When we have approved such early distributions, it has been because the distribution was necessary for the protection of the estate. *See Appeal of Gannon*, 631 A.2d 176, 183-84 (Pa.

---

[13] *See* Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

Super. 1993) (approving of early distribution made to prevent foreclosure on the main asset of the estate).

Arthur's argument misapprehends the Orphans' Court's decision. *See* Arthur's Brief at 33-35. Contrary to Arthur's contention, the Orphans' Court did not rule early distributions made by a personal representative are "automatically void as a matter of law." *Id*. at 33. Rather, the Orphans' Court correctly noted that, at the time of distribution, Arthur had not been appointed the decedent's personal representative, a fact clearly supported by Arthur's own accounting. *See* Orphans' Court Opinion, 1/6/23, at 22; Accounting, 10/5/21, at 1, 6. Arthur has not cited to any legal support for the proposition he was entitled to disburse funds from the decedent's estate prior to his appointment as administrator. *See* Arthur's Brief at 33-35.

Further, the Orphans' Court specifically found, even if Arthur had been the administrator as the time of the "distribution," it could not stand. *See* Orphans' Court Opinion, 1/6/23, at 22-23. It noted the monies had been paid from the $100,000.00 it found Arthur had misappropriated from the estate and "transferred . . . to himself." *Id*. at 22. The Orphans' Court also credited Rodney's testimony that the monies were not an early disbursement but rather a repayment of a personal loan Rodney had made to Arthur. *See id*. at 23. We have no basis to disturb this credibility finding. *See Fiedler*, 132 A.3d at 1018. Thus, Arthur's fourth issue does not merit relief.

For the reasons discussed above, we conclude Arthur's issues are either waived or meritless. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/30/2024